In the Matter of the Application
of HAROLD KAINALU LONG CASTLE
to register title to land situate
at Kailua, Koolaupoko, Oahu,
State of Hawaii

No. 5193

FEBRUARY 7, 1973

RICHARDSON, C.J., MARUMOTO, ABE,
LEVINSON AND KOBAYASHI, JJ.

OPINION OF THE COURT BY ABE, J.

The petitioners, executors of the estate of Harold

Kainalu Long Castle, on March 4, 1971 pursuant to HRS § 501-85, filed a petition in the land court for consolidation and resubdivision of Lots 1017, 1018, 1019 and 1020, shown on Map 227 filed with Land Court Application No. 677, being portions of land described in Transfer Certificate of Title No. 47788.

The land court, as provided by law, referred the proposed map and the description thereon to the state surveyor for verification. After reviewing the map and the premises, the state surveyor filed his report with the land court on March 22, 1971. Among other things, he reported that "the present seashore boundary of these lots are further mauka (inland) than the highwater mark shown on this map and Map 227" and that the State of Hawaii "disputes the highwater mark as shown on this map."

Thereafter, on April 1, 1971, the State of Hawaii filed an objection to the petition for consolidation and resubdivision based on the state surveyor's report, which report was attached to and made a part of the objection.

The petitioners, on May 6, 1971, filed a motion to strike the objection filed by the State and also to strike from the report of the state surveyor statements relative to the seashore boundary. On May 28, 1971, after a hearing, the land court orally granted the motion to strike. Thereafter, the petition for consolidation and resubdivision was heard and orally granted on May 28, 1971.

On June 2, 1971 the written order to strike the objection of the State and the order of subdivision were entered. The land court granted the State leave to file an interlocutory appeal from the order to strike on June 14, 1971. The State filed a notice of appeal and duly perfected an appeal.

Before we can consider the merits of the appeal, it is first necessary that we determine whether the issues on appeal have been made moot by the issuance of the order of subdivision and whether the failure of the State

to appeal from the order of subdivision is fatal to the the State's case.

HRS § 501-63 provides in part:

In all cases a writ of error from the supreme court shall lie to the final decree of the land court on behalf of any party aggrieved by the decree.

Rule 73 (i) of the Hawaii Rules of Civil Procedure has abolished writs of error, and an appeal to this court lies where a judgment could have been reviewed by a writ of error. Rule 73 is made applicable to an appeal from the land court by Rule 81 (f). Thus it would appear that in conjunction with the two above-mentioned rules, HRS § 501-63 provides an aggrieved party in a land court proceeding with the right to appeal from a final decree of that court.

We have often held that a final judgment or decree is not necessarily the last decision of a case. What determines the finality of an order or decree is the nature and effect of the order or decree. *Monette* v. *Benjamin*, 52 Haw. 27, 467 P.2d 574 (1970); *Kalanianaole* v. *Liliuokalani*, 23 Haw. 457 (1916); *Dole* v. *Gear*, 14 Haw. 554, 566 (1903); *Humburg* v. *Namura*, 13 Haw. 702, 704 (1901); *see also Barthrop* v. *Kona Coffee Co.*, 10 Haw. 398 (1896).

When the petitioners' motion to strike the objection of the State was granted, the land court ruled that the State had no standing in court to question the petition for consolidation and resubdivision. Thus, as to the State, the order to strike was a final order and the State had a right to appeal without leave of court.[1] The fact that the

---

[1] As will be seen below, HRS § 501-85 affords a person with an adverse property interest in a consolidation action a right which is not unlike a right to intervene. An order denying intervention is appealable if intervention was a matter of right. Sam Fox Publishing Co. v. United States, 366 U.S. 683 (1961); Sutphen Estates, Inc. v. United States, 342 U.S. 19 (1951). As one authority states:

Any denial of intervention should be regarded as an appealable final

State, probably with an abundance of caution, secured leave of the court to file an interlocutory appeal in no way prejudiced this appeal.

Thereafter when the order of subdivision was entered by the land court, the State was not a party to the action and it cannot be said to have been aggrieved by the entry of the final order of subdivision. Therefore, the State's right of appeal should not be restricted to an appeal from the order of subdivision. Also, for the reasons stated, the entry of the order of subdivision should not deprive the State from having the issues raised by its appeal decided by this court and we rule that the final order of subdivision does not moot the appeal.

The appeal is properly before us and we shall now consider the merits of the appeal.

The pertinent provision of HRS § 501-85 provides:

[I]f any person or persons other than the registered owner appear to have an interest in any part of the premises proposed to be consolidated . . . the court shall not entertain the application for consolidation unless the other person or persons join with the owner in the application . . . , or unless the person or persons if not joining in the application have been given notice thereof and an opportunity to be heard . . . .

The state surveyor called to the attention of the land court that the premises for which consolidation had been requested included land below the highwater mark. The State in its objection stated that the seashore boundaries of the lots were "further mauka (inland) than shown on the maps and descriptions submitted for consolidation and resubdivision." It is correct that the State did not specifically claim title to the submerged portion of

---

order—as it surely is so far as the would be intervenor is concerned.

7A Wright, Federal Practice & Procedure § 1923. *See also* Ionian Shipping Co. v. British Law Insurance Co., 426 F.2d 186, 189 (2d Cir. 1970).

the premises. Probably the State did not advance such a specific claim because this court has not yet ruled as to the status of registered land eroded below the high-water mark. We agree that the State could have been more articulate in its objection and it could have been more specific on the question of ownership of submerged land below the highwater mark. We believe, however, that is not fatal to this appeal.

It is to be noted that Rule 26 of the land court provides the procedure for registering title to land claimed by accretion. On the other hand, no rule provides a procedure whereby the State may claim title to registered land which becomes submerged by erosion. Also, there is no statutory provision or rule of the land court setting out requirements or procedures whereby a party such as the State in this case may intervene or otherwise become a party to consolidation and resubdivision proceedings. Likewise, HRS Ch. 501 is silent as to the method or manner in which the court is to be given notice as to the probable interest held by a party other than the registered owner. We now hold that whenever and however the land court is so apprised, the mandates of HRS § 501-85 become applicable and the land court is prohibited from entertaining the application for consolidation unless the other party joins in the application or is given notice and an opportunity to be heard. Under the circumstances, we hold that the State's act in filing the objection was proper and that it sufficiently informed the court that someone other than the registered owner, probably the State, had an interest or title to the land submerged below the highwater mark, which was a portion of the parcels of land shown on the map and description proposed to be consolidated.[2]

The issue as to the ownership of a portion of the

[2]Here, as in East Diamond Head Ass'n. v. Zoning Board, 52 Haw. 518, 479 P.2d 796 (1971), no statute or rule of the land court provided for intervention. Thus, manifestly, the State did whatever it thought proper to call to the attention of the land court this fact.

registered land eroded below the highwater mark having been raised by the State, the land court, under the provisions of HRS § 501-85, was required either to refuse to entertain the application for consolidation and stop the hearing, or to hear the issue on the ownership of submerged land with the State as a party to the proceeding to consolidate. Here, the land court denied the State standing as a party and granted the consolidation without having decided the issue of the ownership of the submerged land contrary to the dictates of HRS § 501-85.

The petitioners contend that under HRS § 501-186 the State could file an adverse claim and have the matter adjudicated. That may be so; however, we are satisfied that § 501-85 also provides the State a means for the adjudication of its claim to submerged lands.

Under § 501-85, where it appears that someone other than the registered owner has an interest in any part of the premises proposed to be consolidated, the land court is required to give such person notice and "an opportunity to be heard." The phrase "opportunity to be heard," we hold, means the opportunity to have an adverse claim adjudicated in the consolidation proceeding. To hold otherwise would mean that the land court could only deny the application for consolidation and relegate the adverse claim to a separate proceeding, thus turning the hearing called for by § 501-85 into a meaningless and useless proceeding. We do not believe that the legislature intended to provide for such a useless proceeding, and we cannot condone such an inefficient procedure.

The land court's order granting the petitioners' motion to strike objections by the State of Hawaii and to strike material in the report of the state surveyor and the order of subdivision which was entered on June 2, 1971, are reversed, and this case is remanded for further proceedings not inconsistent with this opinion.

*Andrew S. O. Lee,* Deputy Attorney General (*George*

*Pai*, Attorney General, with him on the brief) , for State of Hawaii appellant.

*Page M. Anderson (Jenks, Kidwell, Goodsill & Anderson* of counsel) for petitioners-appellees.

---

DISSENTING OPINION OF KOBAYASHI, J.,
WITH WHOM MARUMOTO, J., JOINS

I dissent.

I find it most difficult in comprehending the rationale or the logic of the majority.

In the instant case, petitioners, appellees herein, are owners of heretofore land courted parcels of land described in Transfer Certificate of Title No. 47788. Pursuant to HRS § 501-85, petitioners filed a petition for consolidation and resubdivision of said land courted parcels of land.

HRS § 501-85 provides:

§ 501-85 *Substitution, one certificate for several, several for one; subdivisions, maps.* A registered owner holding one duplicate certificate for several distinct parcels of land may surrender it, with the approval of the court, and receive separate certificates for portions thereof. A registered owner holding separate duplicate certificates for two or more distinct parcels of land, which are contiguous, or which are so adjacent (although separated by a roadway or stream or other strip of land) as to form one lot of land for practical use, may surrender the certificates, and, with like approval and by a decree of the court, receive a single original and duplicate certificate for the whole, or separate certificates for subdivisions thereof, issued in place of the surrendered certificates; *provided, that if any person or persons other than the registered owner appear to have an interest in*

*any part of the premises proposed to be consolidated,* or in any intervening roadway, stream, or strip of land as aforesaid, *the court shall not entertain the application for consolidation unless the other person or persons join with the owner in the application, signing and acknowledging the same in the same manner as provided for original applications, or unless the person or persons if not joining in the application have been given notice thereof and an opportunity to be heard as shall be ordered by the court.*

Any owner proposing to combine two or more parcels of land, or to subdivide any registered land, shall file with the court an application therefor, together with a map or plan showing the proposed combination or subdivision and accurately delineating thereon all boundaries, streets, passage ways, and other easements connected therewith. The court, before approving the same, and authorizing the issuance of any new certificate or certificates thereon, shall cause the same to be verified by the department of accounting and general services and be satisfied that the same are accurately represented, and that the applicant has complied with sections 65-21 to 65-26 or the county ordinances where any of these provisions apply. (Emphasis added.)

By order of the Land Court the State Land Surveyor checked a copy of the petition, a proposed map and the Transfer Certificate of Title and made the following report to the court, pertinent portions being, to-wit:

[T]he State Land Surveyor begs to report that the same has been examined and checked as to form and mathematical correctness and found to be in order.

And further, said map has been compared with Certificate of Title No. 47788 and found to be in accord therewith.

. . . .

The attention of the court is called to the fact that a recent survey reveals that the present seashore boundary of these lots are further mauka (inland) than the highwater mark shown on this map and on Map 227 adjudicated in December of 1967. The State of Hawaii, therefore, disputes the highwater mark as shown on this map. The Attorney General requests that a hearing be granted before your Honorable Court to litigate the question of the establishment of the highwater mark.

The State of Hawaii, thereafter, filed objections to the petition for consolidation and resubdivision and asked the court to require the petitioners herein to submit to the court for approval a resurvey of the seashore boundaries of the parcels in question.

The State did not challenge petitioners' ownership of any portion of the properties petitioners sought to consolidate and resubdivide. The State did not assert ownership of any portion of petitioners' lands; nor was any claim of ownership made on behalf of a third party. The only thing the State sought, according to the record, was to have the trial court require the petitioners to submit a new survey of the seashore boundary on the allegation that the highwater mark had moved further mauka (inland) than as originally registered in the Certificate of Title.

The fundamental point that the majority loses sight of is our holding in *In re Rosenbledt,* 24 Haw. 298, 308 (1918), modified on another point in 25 Haw. 561 (1920), to-wit:

The Land Court is a court of limited jurisdiction, created for a special purpose, that of carrying into effect what is known as the Torrens title scheme, derives all of its power from the statutes relating to it, and can exercise no power not found within those statutes.

The provisions in HRS § 501-85 are crystal clear and without ambiguity. Nothing in said section permits the State or anyone else to use the section as a procedural vehicle to demand changes in the survey of a land courted property to reflect changes of the highwater mark or litigate the ownership of eroded land courted properties.

HRS § 501-85 clearly provides that a petitioner under said section can be challenged only if certain condition exists, to-wit:

> [I]f any person or persons other than the registered owner appear to have an interest in any part of the premises proposed to be consolidated, or in any intervening roadway, stream, or strip of land . . . .

And if such a condition exists, HRS § 501-85 further provides how the challenge can be effectuated and also provides a procedure for the court to resolve the challenge, to-wit:

> [T]he court shall not entertain the application . . . unless the other person or persons join with the owner in the application . . . or unless the person or persons if not joining in the application have been given notice thereof and an opportunity to be heard as shall be ordered by the court.

The above provisions clearly show that the person joining in the application or to be given notice thereof is a person who is identifiable and who asserts or appears to have an ownership interest contra to petitioners' claim. The Land Court can then determine whether that identifiable person has joined with the petitioners in the petition for consolidation. If no joinder, the Land Court can then give notice to the identifiable person and conduct the required hearing. Notwithstanding the clear terms of HRS § 501-85, the majority states:

> [T]he State did not specifically claim title to the submerged portion of the premises. Probably the

State did not advance such a specific claim because this court has not yet ruled as to the status of registered land eroded below the highwater mark. We agree that the State could have been more articulate in its objection and it could have been more specific on the question of ownership of submerged land below the highwater mark. We believe, however, that is not fatal to this appeal.

We now hold that whenever and however the land court is. so apprised, the mandates of HRS § 501-85 become applicable and the land court is prohibited from entertaining the application for consolidation unless the other party joins in the application or is given notice and an opportunity to be heard. Under the circumstances, we hold that the State's act in filing the objection was proper and that it sufficiently informed the court that *someone other than* the registered owner, *probably the State,* had an interest or title to the land submerged below the highwater mark . . . . (Emphasis added.)

Here, contra to the record on appeal, the majority of this court is changing, creating and inserting new facts; changing, drafting and inserting new pleadings, all in the guise of a procedural vehicle to effect changes in seashore boundaries to incorporate fluctuations of the highwater mark.

The majority of the court sets a dangerous precedent and creates uncertainty and ambiguity in an otherwise clearly stated statutory provision. The opinion, itself, imposes upon the courts and the legal profession a situation where one must ask: "Who is the someone asserting a contra claim?" Upon remand the Land Court will be at a loss as to what it should or could do.

I would affirm the Land Court's judgment.