WALTER G. CHUCK, Plaintiff-Appellee, *v.* ST. PAUL FIRE AND MARINE INSURANCE CO., Defendant-Appellant and JOHN DOE 1-10, et al., Defendants

NO. 7500

and

WALTER G. CHUCK, Petitioner, *v.* THE HONORABLE HAROLD Y. SHINTAKU, Judge, First Circuit, State of Hawaii, Respondent and ST. PAUL FIRE AND MARINE INSURANCE CO., Real Party in Interest

NO. 7553

FEBRUARY 20, 1980

OGATA, ACTING C.J., MENOR, JJ., RETIRED JUSTICE KOBAYASHI AND CIRCUIT JUDGE CHANG, ASSIGNED BY REASON OF VACANCIES AND CIRCUIT JUDGE HUDDY IN PLACE OF RICHARDSON, C.J., RECUSED

OPINION OF THE COURT BY MENOR, J.

S.C. No. 7500 and S.C. No. 7553 were consolidated for hearing and decision. S.C. No. 7500 involves a motion to stay proceedings pending appeal filed by defendant-appellant St. Paul Fire and Marine Insurance Company [hereinafter "St. Paul"]; a motion to dismiss appeal filed by plaintiff-appellee Walter G. Chuck [hereinafter "Chuck"]; and a motion by Chuck to disqualify Cades, Schutte, Fleming & Wright as counsel for St. Paul. S.C. No. 7553 is an action in mandamus filed by Chuck, as petitioner, and Circuit Court Judge Harold Y. Shintaku, as respondent.

These proceedings are the outgrowth of a suit initiated in the circuit court by Chuck against St. Paul, Civil No. 56404, Circuit Court of the First Circuit, which is still pending in the court below. The controversy between Chuck and St. Paul, who was Chuck's malpractice insurance carrier at the time, had its genesis in a lawsuit initiated by the Securities and

Exchange Commission against the Crown Corporation in federal court in 1976. This filing triggered numerous other related civil actions in the federal and state courts which have become known collectively as the "Crown Complex Litigation." From 1966 until the partnership's dissolution in 1974, the law firm of Chuck and Fujiyama had represented a number of corporations, organizations, and individual officers and shareholders who were later involved as parties in the Crown cases. As a result, the firm and its members were made parties defendant in many of these cases, essentially on the basis of alleged professional malpractice. The Crown cases were consolidated and thereafter settled in 1978.

Chuck's complaint against St. Paul charges the latter with breach of contract, infliction of emotional distress, and violation of the Unfair Trade Practices Act. Damages sought by Chuck includes in excess of $240,000.00 in attorney's fees paid by Chuck to his attorney, Godfrey Munter, for legal services rendered in the Crown Complex litigation. This expense, according to Chuck, was necessitated by St. Paul's refusal to provide him with a legal defense.

Before trial, Chuck moved to disqualify Fujiyama and his firm as counsel for St. Paul on the ground that Chuck intended to call Fujiyama as a witness against St. Paul, *see* Disciplinary Rule 5-102(B) of the Code of Professional Responsibility, and on the basis of Disciplinary Rule 4-101 of the Code, which prohibits the use of confidential information by an attorney for his own advantage or for the advantage of another. St. Paul filed a cross motion seeking to disqualify Chuck's counsel, Munter, and the firms of Chuck & Pai and Munter & Martin, claiming that because Munter had been involved in negotiations between Chuck and St. Paul regarding the disputed malpractice insurance coverage, it would become necessary for him to testify on Chuck's behalf to prove some of the material allegations in his complaint. *See* DR 5-102(A) of the Code of Professional Responsibility. The trial court granted both motions, and the parties thereafter filed their respective notices of appeal. Additionally St. Paul moved for a stay pending appeal, and Chuck moved to dismiss St. Paul's appeal on the ground that the trial court's

order disqualifying Fujiyama and his firm was interlocutory and therefore not appealable without leave of the trial court. Chuck subsequently petitioned this court for a writ directing the trial court to vacate its order disqualifying Munter from representing him in the pending litigation. He has also moved this court to disqualify the firm of Cades, Schutte, Fleming & Wright from representing St. Paul.

I.

We address ourselves first to Chuck's motion to dismiss St. Paul's appeal, the resolution of which hinges upon whether the order disqualifying Fujiyama is a final judgment of the trial court for purposes of appeal.

An appeal in civil cases may be taken as a matter of right only from a final judgment, order or decree of the trial court. HRS § 641-1. Such judgment, order or decree, however, need not be the final decision in the case, nor is it necessary that it conclude all rights that are the subject of the litigation. *In re Application of Castle*, 54 Haw. 276, 506 P.2d 1 (1973). Included in this category are certain collateral orders affecting rights which are independent of, and separable from, the rights asserted in the main action. *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949). In *Cohen*, the Supreme Court had before it a district court order denying the defendant-appellee's motion to compel the plaintiff-appellant to post security as a condition to his action. In holding the order to be final for the purposes of appellate review, the Court said:

> This decision appears to fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated. 337 U.S. at 546.

Alternatively referred to as the "collateral order doctrine," the *Cohen* rule has been applied in cases of attorney disqualification. Thus, federal courts have consistently held

that orders granting motions for disqualification are immediately appealable under the rule. *See, e.g., Aetna Cas. & Sur. Co. v. United States,* 570 F.2d 1197 (4th Cir. 1978); *Schloetter v. Railoc of Indiana, Inc.,* 546 F.2d 706 (7th Cir. 1976); *Hull v. Celanese Corp.,* 513 F.2d 568 (2d Cir. 1975); *Richardson v. Hamilton International Corp.,* 469 F.2d 1382 (3rd Cir. 1972). And while there exists some disagreement over its applicability to orders denying disqualification, *compare, e.g., Community Broadcasting of Boston, Inc. v. F.C.C.,* 546 F.2d 1022 (D.C.Cir. 1976) *with Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d.Cir. 1974), a large number of cases appear to hold that both types of orders are immediately appealable under the *Cohen* rule. 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3911, at 490 (1976). The rationale for these holdings essentially is that the "rights to be represented by chosen counsel, or not to be opposed by disqualified counsel, are incapable of effective preservation after trial, even if a second trial should be awarded." *Id.* In resolving the case before us today, we have given the views of these other jurisdictions our respectful consideration.

We have already held, however, that orders denying disqualification are interlocutory and hence not appealable as of right under the rule, *Gomes v. Heirs of Kauwe,* 52 Haw. 126, 472 P.2d 119 (1970), and while a distinction could be drawn between an order denying and an order granting disqualification,[1] we are not of the view that appeal from the latter order should be accorded as a matter of right. The *Cohen* rule was intended by the Supreme Court to apply only to those cases

---

[1] In Fleischer v. Phillips, 264 F.2d 515, 517 (2nd Cir. 1959), the court stated that "[a]n order granting disqualification seriously disrupts the progress of the litigation and decisively sullies the reputation of the affected attorney; but one refusing such relief merely allows the action to proceed and has no permanent effect of any kind." The holding in Fleischer that an order granting disqualification was immediately appealable was later overruled by Silver Chrysler Plymouth, supra. The court there found no distinction between the two orders under its interpretation of the Cohen rule and held that both orders granting and denying disqualification were immediately appealable.

which were too important to be denied review *through the appellate process,* and we are reluctant, at least insofar as it concerns attorney disqualifications, to expand the doctrine much beyond that which necessitated its formulation in the first instance.[2]

We recognize, of course, the importance of a party's right to be represented by his chosen counsel, and we are not unmindful of the inconvenience that may be visited upon him by reason of his counsel's disqualification. But the party whose counsel is disqualified is not without some means of judicial review. He may move the trial court for permission to take an interlocutory appeal. HRS § 641-1. And while the motion would be addressed to the sound discretion of the trial court, the process does enable the trial court to perform the important and necessary function of isolating cases meriting appellate review from those that would result in unnecessary expense and delay. Automatic appeal, as of right, in every case of counsel disqualification would preclude the utilization of this salutary procedural screening device.

The trial court, being intimately familiar with the nature and course of the litigation, is in the best possible position to determine whether special circumstances exist to warrant interlocutory appellate review of the attorney's disqualification. Failing in his efforts to obtain interlocutory review, the party affected by the disqualification may still petition this court for a writ of mandamus to direct the trial court to set aside its order of disqualification. *Cf. Wong v. Fong,* 60 Haw. 601, 593 P.2d 386 (1979).

---

[2] The Supreme Court decided Cohen at a time when the federal final judgment rule, 28 U.S.C. § 1271, was rigid and inflexible. The collateral judgment rule which emerged from the decision had the effect of alleviating some of the hardships which the denial of prompt appeal caused in some cases. With the enactment of the Interlocutory Appeals Act of 1958, 28 U.S.C. 1292(b), and the 1963 amendment of Rule 54(b) of the Federal Rules of Civil Procedure, and the availability of supervisory mandamus, Professor Moore raises the possibility that the *Cohen* rule may eventually outlive its usefulness. 9 Moore's Federal Practice, ¶ 110.10, at 135-36 (2d ed. 1975).

## II.

In *Wong v. Fong, supra,* we held that while an order denying a motion for disqualification is not appealable as a final judgment, the party against whom the decision is rendered may still be entitled to a writ of mandamus where irreparable and immediate harm would otherwise result. We think that this potential remedy is equally appropriate in cases of attorney disqualification. Thus, where the basis upon which the trial court rested its order of disqualification is clearly insufficient, and a convincing showing is made by the petitioner that irreparable and immediate harm would otherwise be the necessary consequence, the petitioner's application for a writ of mandamus will be granted.

The trial court's disqualification of Munter was predicated upon Disciplinary Rule 5-102(A) of the Code which provides:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm *ought to be called as a witness on behalf of his client,* he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he and a lawyer in his firm may testify in the circumstances in DR 5-101(B)(1) through (4).[3] (Emphasis added)

---

[3] The ethical considerations underlying this rule are explained by EC 5-9 of the Code. Basically, an advocate's credibility as a witness should not, if it can be avoided, be injected into the proceedings. There are instances, however, where the attorney should be allowed to testify without being required to disqualify himself. Accordingly, Disciplinary Rule 5-101(B) provides that notwithstanding DR 5-102(A), a lawyer may continue the representation and testify in the following circumstances:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

Thus, where a lawyer is privy to certain disputed material facts about which he is competent to testify, and if his testimony regarding those facts will likely be necessary to protect his client's interests, he should discontinue the representation. *Comden v. Superior Court of Los Angeles County,* 145 Cal.Rptr. 9, 576 P.2d 971 (1978).

The trial court's ruling on St. Paul's motion for disqualification of Munter essentially was predicated upon Fujiyama's affidavit submitted in support of the motion, alleging in pertinent part as follows:

> That as early as November of 1975, Mr. Munter had been communicating with the employees of ST. PAUL regarding the matter of coverage for Plaintiff WALTER G. CHUCK.
>
> That CHUCK sent letters to ST. PAUL considering the retention of Mr. Munter as counsel for him and/or coverage.
>
> That extensive negotiations were held by Mr. Munter and/or CHUCK with employees and/or attorneys of ST. PAUL from that date.
>
> That obviously, Mr. Munter and CHUCK are both the principal parties involved out of which all of the allegations in the Complaint must be proved.
>
> That each will be deposed and will be testifying as to acts of ST. PAUL to prove the matters alleged in their Complaint as this can come primarily from them in this lawsuit.

The foregoing representations fall far short of the showing necessary to disqualify Munter. The issue of whether or not Munter should be allowed to continue as counsel is critical to the conduct of the litigation and should not be decided on the basis of general and conclusory allegations. It does not necessarily follow that Munter ought to be called as a material witness on Chuck's behalf simply because of Munter's participation in the negotiations with St. Paul. For that matter, Chuck in his affidavit has represented that he does not pres-

ently know of any facts that he believes would be seriously controverted by St. Paul and about which Munter could competently testify. It might well be that in the subsequent course of the proceedings, facts not now apparent on the record might emerge to trigger the application of DR 5-102(A). That, however, is presently not the case and we think that the trial court clearly erred in disqualifying Munter on the basis of the Fujiyama affidavit. It should have based its determination on a "considered evaluation of all pertinent factors including, inter alia, the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established." *Comden v. Superior Court of Los Angeles County, supra,* 145 Cal.Rptr. at 12, 576 P.2d at 974.

The defenses raised by St. Paul, at least as to the claim that Chuck was involved in a personal capacity as director or officer of the Crown Corporation and not as an attorney, has brought into issue the facts and circumstances connected with the Crown Complex litigation. The litigation involved numerous individual claims and a factual background spanning the course of over ten years. The loss of Munter and his peculiar knowledge of the facts underlying the charges made in the Crown Complex cases will undoubtedly work a substantial hardship on Chuck's ability to present his case. Chuck has, as a consequence of Munter's disqualification, been unable to obtain substitute counsel and has been forced to represent himself in this action. Based on the foregoing, and coupled with the death of three material witnesses since the initiation of the Crown Complex litigation and the threatened loss of further evidence due to the delay associated with ordinary appellate procedures, we think that immediate and irreparable harm has been shown to justify the granting of the petition for the writ of mandamus. The petition, therefore, is granted and the writ will issue.

Consistent with this opinion, St. Paul's motion for stay pending appeal is denied, and Chuck's motion to dismiss appeal is granted. Chuck's motion to this court to disqualify the firm of Cades, Schutte, Fleming & Wright is denied.

Under the circumstances, the trial court would be the more appropriate forum for the determination of such a motion.

*Walter G. Chuck*, pro se plaintiff-appellee and petitioner.

*Richard R. Clifton (Cades, Schutte, Fleming & Wright*, of counsel) for defendant-appellant, St. Paul Fire & Marine Ins. Co.

*Howard Gravelle*, Deputy Attorney General for respondent *Judge Shintaku*.