EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF HAWAII, Plaintiff-Appellee, *v.* BIG ISLAND REALTY, INC.; CLARA K. OSORIO; ELROY T. L. OSORIO; UNION INVESTMENTS, INC.; RALPH S. AOKI; ROBERT K. HASEGAWA, Director of Labor and Industrial Relations, State of Hawaii; HILO ELECTRIC LIGHT COMPANY, LIMITED; KAUAI CREDIT ADJUSTERS, LIMITED; RALPH W. KONDO, Director of Taxation, State of Hawaii; LOYALTY INSURANCE AGENCY, LTD.; SOKEI DAIRY, LTD.; T. SHIGEMURA CO., LTD.; UNITED STATES OF AMERICA; WOODRUM AND STAFF, LTD.; and JAMES K. ZAIMA, Defendants-Appellees, and GOLDEN TRIANGLE REAL ESTATE, Interpleading Defendant-Appellant

NO. 6839

MAY 4, 1981

HAYASHI, C.J., PADGETT AND BURNS, JJ.

*Per Curiam.* A broker[1] in a negotiated foreclosure sale contract which was approved by the lower court but which did not close because the buyer defaulted appeals the court's award to it of a $25,000 commission, claiming entitlement to a $75,000 commission.

---

[1] We are not sure whether the broker represented the buyer, the seller, or both.

This case involves a trap for the unwary of which we spoke in *Sturkie v. Han*, 2 Haw. App. 140, 627 P.2d 296 (1981). *Sua sponte*, we question our jurisdiction to entertain this appeal. *B.D.M., Inc. v. Sageco, Inc.*, 57 Haw. 73, 549 P.2d 1147 (1976). We hold that the matter of the broker's commission is a matter relating to the expenses of sale (in this instance, non-sale) of the property which absent permission or certification[2] by the trial court is appealable only after the entire case is fully adjudicated.

On March 21, 1967, Big Island Realty, Inc. (Big Island), Elroy T. L. Osorio and Clara K. Osorio (Osorios) executed a promissory note (note) in favor of the Employees' Retirement System of the State of Hawaii (ERSSH) and secured it with a mortgage of real property.

On December 16, 1968, subject to ERSSH's lien, Big Island conveyed to Union Investments, Inc. (Union), portions of the property secured by the mortgage. In return, Union assumed and agreed to pay all amounts due on the note.

In response to Union's default, ERSSH initiated and pursued foreclosure proceedings. Union, via its trustee in reorganization, claimed a $200,000 interest "in the portion of the mortgaged property conveyed to Defendant Big Island Realty, Inc. . . . ." Various judgment creditors of Big Island and Union asserted their recorded judgment liens. The State of Hawaii Department of Taxation asserted that Union owed it taxes, penalties, interest, and unemployment contributions. Loyalty Insurance Agency, Ltd. (Loyalty), asserted Union's mortgage recorded on January 26, 1970. The United States of America claimed Union owed it $235,778.58.

The Osorios cross-claimed against Union asserting Union's breach of its agreement to pay all amounts owed ERSSH by the Osorios.

An interlocutory[3] decree of foreclosure (IDF) was filed on October 23, 1974. The IDF gave Big Island and the Osorios thirty days to file a motion for consideration of their claims that Big Island was

---

[2] We decide that there can be no appeal without permission or certification, not whether permission or certification could have been properly granted. *See* 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURES: Civil § 2655 (1973).

[3] The decree of foreclosure is final even though it is titled "interlocutory". *Independence Mtge v. Glenn Constr. Corp.*, 57 Haw. 554, 560 P.2d 488 (1977).

not liable on the note to ERSSH, and that the real estate retained by Big Island and not conveyed to Union was not subject to the mortgage in favor of ERSSH. The motions were filed and included a request that the property conveyed to Union be foreclosed before the property which was retained by Big Island.

On March 1, 1975, the lower court filed an order which ruled that ERSSH's mortgage covered all the property (including the property which Big Island did not convey to Union) but which reserved the question of the liability of Big Island and the Osorios for any deficiency.

On November 19, 1975, the lower court filed an order authorizing the negotiated sale of the property to Pandala Sales and Travel Ltd. for $1,950,000. It reserved the question whether Golden Triangle Real Estate (Golden Triangle) should be paid a $75,000 commission. Thereafter, on December 19, 1975, the lower court filed an order approving Golden Triangle's $75,000 commission. However, this sale never closed, and the record does not indicate what was done with the $50,000 deposit.

On November 30, 1976, the lower court filed an order authorizing the negotiated sale of the property to Donald F. Crawshaw for $2,025,000. The court approved an amended Deposit, Receipt, Offer and Acceptance (DROA) which provided for a $75,000 commission to Golden Triangle. This sale never closed either, and on August 26, 1977, the lower court authorized the commissioner to terminate the purchase agreement and retain the $200,000 deposit as liquidated damages.

The DROA provided that in the event the seller retained the deposit then the seller and Golden Triangle would each receive one-half of the amount retained but that Golden Triangle's share could not exceed $75,000. Thus, Golden Triangle, although not a party in the case,[4] asserted a claim for its $75,000 commission. This demand was opposed by the Osorios, the ERSSH, and Loyalty. By

---

[4] On appeal, Golden Triangle refers to itself as interpleading defendant-appellant. We think it is an intervenor, not an interpleador. It appears that Rule 24, HRCP (1954, as amended), should have been followed in this case but was not. However, we choose not to impose sanctions for this apparent failure to follow the Hawaii Rules of Civil Procedures.

order dated October 6, 1977, the court awarded Golden Triangle a $25,000 commission, which order Golden Triangle appealed without obtaining permission under HRS § 641-1(b) (1976) or certification under Rule 54(b), HRCP (1954, as amended).

Obviously, when Golden Triangle appealed the lower court's October 6, 1977, order, the broker's fee issue had been completely adjudicated[5] but many other issues in the foreclosure case had not been adjudicated. The property had not been sold; the various claims of alleged lienors admittedly junior to ERSSH had not been adjudicated; nor had it been determined whether Big Island and the Osorios were liable for any resulting deficiency.

If[6] this case is deemed to be a single claim case involving a single plaintiff and a single defendant, brokers' fees are part of the expenses of sale (or non-sale) of the property, and they are deemed to be an incident to the enforcement of the decree of foreclosure, and absent permission under HRS § 641-(1)(b) (1976) errors alleged with respect to them are appealable only after the entire case is fully adjudicated. *Sturkie v. Han, supra.*

If[7] this case is deemed to be a multiple claims or a multiple parties case, the decision of the court concerning Golden Triangle's entitlement to a broker's fee completely adjudicated Golden Triangle's claim for a broker's fee but did not completely adjudicate all the claims or rights and liabilities of all the parties and is not appealable absent certification under Rule 54(b), HRCP (1954, as amended). *See* 10 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURES: Civil § 2660 (1973); *Flegenheimer v. Manitoba Sugar Co., Ltd.,* 182 F.2d 742 (2d Cir. 1950); *Island Holidays, Inc. v. Fitzgerald,* 58 Haw. 552, 574 P.2d 884 (1978).

The only exception to the above-stated rules[8] possibly applicable in this case is the collateral order doctrine recognized by the Hawaii

---

[5] If the judgment, order, or decree does not completely adjudicate one entire claim, it may, with the trial court's permission, be appealed under HRS § 641-1(b) (1976).

[6] [7] It is not necessary for us in this case to decide this issue and we therefore do not decide it.

[8] The collateral order doctrine applies to single claim cases involving one plaintiff and one defendant and multiple claims cases and multiple parties cases. *See* 6 MOORE'S FEDERAL PRACTICE ¶ 54.31 at 471 (1976).

Supreme Court in *MDG Supply v. Ellis,* 51 Haw. 480, 463 P.2d 530 (1969), and *Chuck v. St. Paul Fire and Marine Insurance Co.,* 61 Haw. 552, 606 P.2d 1320 (1980).

As stated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, at 546, 69 S.Ct. 1221, at 1225-1226, 93 L.Ed 1528, at 1536 (1949), collateral orders are "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

Hawaii is a member of the resistance to any extension of the collateral order doctrine, which resistance is referrred to in 9 MOORE'S FEDERAL PRACTICE ¶ 110.10 at 130 (1980). *See Chuck v. St. Paul Fire and Marine Insurance Co., supra.*

Since HRS § 641-1(b) (1976) and Rule 73(a), HRCP (1954, as amended) (applicable to cases not governed by Rule 54(b)) and Rule 54(b), HRCP (1954, as amended) (applicable to completely adjudicated claims in multiple claims and multiple parties cases) give the trial court the discretion to decide whether such orders may be appealed interlocutorily, we think the need for the collateral order doctrine should be limited to special and exceptional circumstances. Further, as a matter of general policy, we look with disfavor on case law rules which amend the more properly adopted and promulgated rules, especially when such case law rules restrict the ability of the trial judge to control the progress of the case.

Consequently, although there are many Hawaii cases[9] dealing with the right to an appeal of an interlocutory-deemed-final order, we caution against over-reliance on their precedential value, especially those cases decided prior to Rule 54(b), HRCP (1954, as

---

[9] *See e.g.: Chuck v. St. Paul Fire and Marine Insurance, Co.,* 61 Haw. 552, 606 P.2d 1320 (1980); *Cleveland v. Cleveland,* 57 Haw. 519, 559 P.2d 744 (1977); *In Re Application of Castle,* 54 Haw. 276, 506 P.2d 1 (1973); *Gomes v. Heirs of Kauwe,* 52 Haw. 126, 472 P.2d 119 (1970); *Monette v. Benjamin,* 52 Haw. 27, 467 P.2d 574 (1970); *MDG Supply v. Ellis,* 51 Haw. 480, 463 P.2d 530 (1969); *Chang v. City & County,* 51 Haw. 137, 453 P.2d 753 (1969); *Iwai v. City & County,* 51 Haw. 307, 459 P.2d 195 (1969); *Berkness v. Hawaiian Elec. Co.,* 47 Haw. 479, 391 P.2d 869 (1964); *MacKenzie v. Choi,* 47 Haw. 298, 387 P.2d 475 (1963); *Kalanianaole v. Liliuokalani,* 23 Haw. 457 (1916).

amended), in its present form. For all interlocutory appeals, we strongly recommend usage of the procedure outlined in HRS § 641-1(b) (1976) (for cases not governed by Rule 54(b)) and in Rule 54(b), HRCP (1954, as amended) (for completely adjudicated claims in multiple claims or multiple parties cases).

In any event the question is whether the court's order awarding only $25,000 broker's fee is a collateral order. We hold that it is not. If in this case the sale had closed in due course, then there would be no question that the interlocutory appeal required permission or certification. The fact that the sale did not close does not lead us to conclude that the broker's fee claim is so separable from, collateral to, and independent of the decree of foreclosure as to cause us to label it as a collateral order thus allowing it to be appealed without permission or certification.

We hold that Golden Triangle has appealed an order which does not have the finality required by HRS § 641-1(a) (1976). Consequently, we do not have jurisdiction.

Appeal dismissed for lack of jurisdiction.

*Albert Gould (Benjamin L. Carroll, III,* with him on the briefs; *Gould & McKenzie)* for interpleading defendant-appellant.

*Roger S. Moseley (Nobuki Kamida* on the brief), Deputy Attorney General, for plaintiff-appellee.

*Neil F. Hulbert (Hong & Iwai)* for defendant-appellee Loyalty Insurance Agency, Inc.