883 P.2d 78

**Sallie SIANGCO and Daniel Siangco, Plaintiffs–Appellees,**

v.

**Glenn KASADATE, John Does 1–5, Jane Does 1–5, Doe Corporations 1–5 and Doe Entities 1–5, Defendants–Appellants.**

No. 16701.

Supreme Court of Hawai'i.

Oct. 25, 1994.

**158**

Janice Wolf (James P. Dandar, with her on the briefs), Honolulu, for defendants-appellants.

Kenneth M. Sabath, on the briefs, Honolulu, for plaintiffs-appellees.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Glenn Kasadate appeals from an order imposing sanctions, asserting that we have jurisdiction to review the order under the collateral order doctrine. Because we conclude that we do not, we dismiss this appeal for lack of appellate jurisdiction.

## I. BACKGROUND

On October 11, 1990, Kasadate's Ford Bronco "rear-ended" plaintiff-appellee Sallie Siangco's Mercury Topaz while she was stopped behind another automobile waiting to make a left-hand turn on Waikalua Road in Kāneʻohe on Oʻahu. On August 23, 1991, Sallie and her husband, plaintiff-appellee Daniel Siangco, (collectively the Siangcos) filed a complaint in the Circuit Court of the First Circuit, State of Hawaiʻi, alleging that the accident was caused by Kasadate's reckless or negligent driving. The complaint sought recovery for a variety of injuries allegedly sustained by Sallie and for loss of consortium on behalf of Daniel.

Kasadate answered the complaint on October 4, 1991, essentially denying the main allegations against him and asserting a number of standard defenses to the Siangcos' claims.

Pursuant to Hawaiʻi Revised Statutes (HRS) § 601–20 (Supp.1992) and the Hawaiʻi Arbitration Rules (HAR), the case was assigned to the Court Annexed Arbitration Program, and an arbitration hearing was held. On June 18, 1992, the arbitrator assigned to the case filed an award. On July 6, 1992, Kasadate requested a trial de novo, pursuant to HAR 22.[1] Less than one month later, on July 31, 1992, the Siangcos filed a motion for partial summary judgment on the issue of liability. The Siangcos argued that the undisputed fact that Kasadate's vehicle hit Sallie's from behind while she was lawfully stopped conclusively established that Kasadate was following too closely and was inattentive to the movement of traffic in front of him. They argued, therefore, that Kasadate was negligent as a matter of law and that his negligence was the sole legal cause of the Siangcos' alleged injuries.

On August 19, 1992, Kasadate filed an amended answer to the complaint, asserting, apparently for the first time in the case, that he "intend[ed] to rely on the defense of un-

---

**1.** HAR 22(A) (1991) provides that "[w]ithin twenty (20) days after the award is served upon the parties, any party may file with the clerk of the court and serve on the other parties and the Arbitration Administrator a written Notice of Appeal and Request for Trial De Novo of the action."

avoidable accident/unforeseen loss of consciousness." On August 24, 1992, Kasadate filed a memorandum in opposition to the Siangcos' motion for partial summary judgment, in which he outlined the nature of his newly-asserted defense. He argued that the accident occurred not because he was tailgating or driving inattentively, but because he lost consciousness while driving. He claimed that he suffered from a "seizure disorder" that caused him to "lose consciousness without warning, with no subsequent awareness o[r] recollection of what actually transpired during the course of the seizure." Kasadate claimed that, although the disorder had been under control for several years, immediately preceding the accident he suffered an unexpected seizure that essentially caused him to "black out." The disorder, Kasadate contended, made the accident unavoidable and therefore "exempted" him from any liability for the accident.

Kasadate, however, offered little in the way of admissible evidence to support his arguments. He did not, as might be expected, offer his own affidavit in support of his claim that he suffered a seizure just before the accident, but instead relied on testimony from his deposition—given less than two weeks earlier—in which he simply stated that he had no recollection about how the accident occurred.[2] And while he did adduce what he described as his medical records indicating that he suffered from a seizure disorder for which he was taking medication, he failed to offer his doctor's affidavit confirming the diagnosis of seizure disorder, its symptoms or his treatment history.

In lieu of his doctor's affidavit, Kasadate offered the affidavit of his attorney in which she stated that on August 6, 1992, she had interviewed Kasadate's primary treating physician, Dr. Pearce, about Kasadate's seizure disorder. Despite the requirement of Hawaiʻi Rules of Civil Procedure (HRCP) 56(e) that supporting affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is compe-

tent to testify to the matters stated" in the affidavit, the affidavit offered by Kasadate's attorney simply recounted certain hearsay statements of Dr. Pearce. For instance, Kasadate's attorney declared that Dr. Pearce told her, among other things, that Kasadate suffered from a seizure disorder that "manifests itself in seizure episodes that are not foreseeable or predictable" and that it was his "opinion to a reasonable degree of medical probability that Glenn Kasadate did conceivably suffer a seizure immediately before the accident on October 11, 1990."

A hearing on the Siangcos' motion for partial summary judgment was held on August 27, 1992. At the hearing, Kasadate's attorney stated that, although she had presented an affidavit to Dr. Pearce and that he had "never indicated that he would not sign it or that he would not be prepared to testify," she was unable to obtain his signature on the affidavit in time for the hearing. However, rather than request a continuance of the hearing pursuant to HRCP 56(f) to obtain Dr. Pearce's signature on the affidavit, Kasadate's attorney chose to proceed with the hearing. At the end of the hearing, the court granted the Siangcos' motion for partial summary judgment.

A written order granting partial summary judgment in favor of the Siangcos was entered by the circuit court on October 19, 1992.

Four days later, on October 23, 1992, Kasadate filed a motion for reconsideration of the order, in which he essentially reiterated the arguments that he made in his original opposition to the Siangcos' motion for partial summary judgment. This time, however, Kasadate attached to his motion: (1) his own affidavit in which he declared, among other things, that he had suffered from "an unexplained seizure disorder since 1986" and that he believed that he "suffered a seizure before the accident[;]" (2) an affidavit signed by Dr. Pearce on August 27, 1992 (the original hearing date), which confirmed the statements

---

2. When Kasadate was pressed during his deposition to account for his memory loss, he simply stated that he did not know why he could not remember how the accident happened; the de-

position testimony included in the record on appeal indicates that he did not mention his seizure disorder.

that Kasadate's attorney's earlier affidavit had attributed to him; and (3) additional medical records. The only explanation apparently offered for the delay in adducing this additional evidence was a statement in another affidavit of Kasadate's attorney that, "[b]ecause of Dr. Pearce's busy schedule, which included being in Kona, I was unable to obtain his affidavit in time to attach it to the Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment." On November 13, 1992, Kasadate supplemented his motion for reconsideration with additional evidence purportedly demonstrating that the injuries Sallie claimed were caused by Kasadate actually pre-dated the accident.

The Siangcos opposed the motion for reconsideration primarily on the ground that Kasadate's additional evidence was "too little, too late" and that it should have been presented at or before the August 27, 1992 hearing.

A hearing on the motion for reconsideration was held on November 18, 1992. During the course of the hearing, the court questioned Kasadate's attorneys about why the additional evidence was not presented at the August 27, 1992 hearing. In response, Kasadate's attorneys simply stated that Dr. Pearce was "unavailable" at the time of the original hearing and that "[w]e got him to sign it after the fact." No further explanation or justification was given. At the conclusion of the hearing, the court took the matter under advisement.

Two days later, the court entered an order granting Kasadate's motion for reconsideration and vacating its previous order granting partial summary judgment in favor of the Siangcos. Finding that the newly adduced evidence "raise[d] genuine issues of material fact[,]" the court ruled that "justice require[d] the denial of the Siangcos' Motion for Partial Summary Judgment." The order, however, went on to state:

> The evidence submitted for this Motion should have been submitted at the original hearing, August 27, 1992.
>
> .    .    .    .    .    .
>
> Considerations of efficiency and avoidance of undue expense require that the Defendant suffer appropriate consequences for not initially meeting the requirements of Rule 56. Therefore, the Court additionally rules that the Defendants shall be liable for the following:
>
> 1. Reasonable attorney's fees and costs of Plaintiff[s] incurred in bringing and arguing the original Motion for Partial Summary Judgment and opposing the Motion for Reconsideration.
>
> 2. Costs and expenses, including reasonable attorney's fees and costs, of all additional repetitive discovery or other proceedings which must now be conducted as a result of the Court's reconsideration and denial of Plaintiff[s'] Motion for Partial Summary Judgment.
>
> 3. Costs and expenses of the trial of the issues raised by Defendant in opposition to the original Motion, if the defenses based thereon fail at trial.

On December 18, 1992, Kasadate filed a notice of appeal, seeking review of the part of the circuit court's order imposing sanctions.

## II.  *DISCUSSION*

■ Kasadate contends that we have jurisdiction under the collateral order doctrine to hear his appeal of the circuit court's order imposing sanctions. We disagree.

■ We may hear appeals from only a final judgment, order, or decree, except as otherwise provided by law. *Jenkins v. Cades Schutte Fleming & Wright,* 76 Hawai'i 115, 118, 869 P.2d 1334, 1337 (1994) (citing HRS § 641–1(a) (1985)); *Kernan v. Tanaka,* 75 Haw. 1, 16, 856 P.2d 1207, 1215–16 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994); *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 105, 705 P.2d 28, 33 (1985). "Such judgment, order or decree, however, need not be the final decision in the case, nor is it necessary that it conclude all rights that are the subject of the litigation." *Chuck v. St. Paul Fire & Marine Ins. Co.,* 61 Haw. 552, 555, 606 P.2d 1320, 1323 (1980) (citation omitted). " 'What determines the finality of an order or decree for purposes of appeal is the nature and effect of the order or decree.' " *International Sav. & Loan Ass'n v.*

*Woods,* 69 Haw. 11, 15, 731 P.2d 151, 154 (1987) (quoting *In re Application of Castle,* 54 Haw. 276, 278, 506 P.2d 1, 3 (1973)) (brackets omitted). Thus, following the reasoning of the United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), we have held that "[c]ertain collateral orders affecting rights which are independent of, and separable from, the rights asserted in the main action[,]" *Chuck,* 61 Haw. at 555, 606 P.2d at 1323, are "immediately appealable since they may not be effectively reviewable and rights could be lost, perhaps irretrievably, if review invariably had to await final judgment." *International Sav. & Loan,* 69 Haw. at 15, 731 P.2d at 154.

In order to fall within the narrow ambit of the collateral order doctrine, the "order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (footnote omitted); *see also Association of Owners of Kukui Plaza,* 68 Haw. at 105, 705 P.2d at 34; *MDG Supply, Inc. v. Diversified Investments, Inc.,* 51 Haw. 480, 481–82, 463 P.2d 530, 532 (1969).

In our view, the sanctions order at issue in this case did not "conclusively determine the disputed question" and will not be "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458. Thus, we hold that the collateral order doctrine does not apply and that we therefore lack appellate jurisdiction to review the sanctions order at this time.

First, the circuit court's order did not fully and finally dispose of the sanctions issue because it did not specify the amount of the Siangcos' attorney's fees that Kasadate would have to pay, but merely identified in general terms the activities that would be reimbursable. Because the circuit court will have to revisit the issue to set the exact amount of the fees owed the Siangcos, the sanctions order is interlocutory. *See In re Estate of Henry,* 2 Haw.App. 529, 532, 634 P.2d 615, 618 (1981) (order awarding attorney's fees is not reviewable under the collateral order doctrine where attorney's services were not yet complete); *Gates v. Central States Teamsters Pension Fund,* 788 F.2d 1341, 1343 (8th Cir.1986) (an order "finding appellant liable for attorneys' fees and costs but without determining the specific amount of that award is not a final and appealable order").

Second, we see no reason why Kasadate would be unable to obtain effective review of the sanctions order following entry of the final judgment in this case. We are aware that a number of cases hold that orders imposing sanctions against *attorneys* are immediately appealable under the collateral order doctrine on the ground that, if required to await final judgment in the case, an attorney's right to appeal the order would be irretrievably lost if the parties decided to settle or not appeal. *See, e.g., Transamerica Commercial Fin. Corp. v. Banton, Inc.,* 970 F.2d 810, 815 (11th Cir.1992) ("an attorney ... as a non-party may not be able to seek review of a sanction imposed on him or her upon appeal from a final judgment, because the remaining defendants may settle or decide not to appeal"); 15A C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3911.3, at 414–15 & n. 38 (2d ed. 1991); *see also Nakata v. Nakata,* 7 Haw.App. 636, 636–37, 793 P.2d 1219, 1220 (1990) (order requiring counsel to pay attorneys' fees is appealable under the collateral order doctrine). The same concern, however, is not present when the sanctions are imposed against a *party* to the action.

The sanctions in this case were imposed against Kasadate. As an aggrieved party, he can obtain review of the sanctions order by appealing from the final judgment. He has made no argument that he would suffer irreparable harm to any significant interest if required to wait until final judgment to appeal the order. Thus, in our view, postponing consideration of the order until after final judgment will not jeopardize Kasadate's right to effective review on appeal.

We recognize that several Hawai'i cases have held that orders imposing sanctions against parties are reviewable under the col-

lateral order doctrine. *See Harada v. Ellis,* 60 Haw. 467, 480, 591 P.2d 1060, 1070 (1979); *De Silva v. Burton,* 9 Haw.App. 222, 227, 832 P.2d 284, 287 (1992), *overruled on other grounds, In re Tax Appeal of Hawaiian Flour Mills, Inc.,* 76 Hawai'i 1, 15, 868 P.2d 419, 433 (1994); *Kukui Nuts of Hawaii, Inc. v. R. Baird & Co., Inc.,* 6 Haw.App. 431, 433 n. 1, 726 P.2d 268, 270 n. 1 (1986). Because the applicability of the collateral order doctrine depends on the facts of each case, the holdings in those cases are not necessarily inconsistent with the holding in the instant case. *Harada,* for instance, appears to be distinguishable on the ground that the appellant was "in immediate jeopardy of being found in contempt of court if he did not comply" with the order directing payment of the assessed sum. 60 Haw. at 480, 591 P.2d at 1070. And *Kukui Nuts* is distinguishable because the sanctions order specified the amount of the sanction to be paid and because the order was subsequently reduced to an enforceable judgment. 6 Haw.App. at 435, 726 P.2d at 271. Although *De Silva* differs from the instant case in that the sanctions order specified the amount to be paid, 9 Haw.App. at 225, 832 P.2d at 286, there are no facts in *De Silva* indicating that the appellant could not have obtained effective review of the order on appeal from the final judgment. Accordingly, we overrule its holding that the collateral order doctrine applied.

### III. *CONCLUSION*

■ Allowing widespread appeals from collateral orders would frustrate the policy against piecemeal appeals embodied in HRS § 641–1. Thus, we must construe the collateral order doctrine narrowly and be parsimonious in its application. Because we believe that the sanctions order at issue in this case fails to satisfy the strict prerequisites of the collateral order doctrine, we hold that it is not a final appealable order. There being no other basis for jurisdiction,[3] we dismiss this appeal for lack of appellate jurisdiction.

3. Kasadate does not argue, and there is nothing in the record to indicate, that the circuit court

allowed an interlocutory appeal from the order pursuant to HRS § 641–1(b) (1985).