966 P.2d 631

**Arnold R. ABRAMS and Richard I. Blum, Plaintiffs–Appellees,**

v.

**CADES, SCHUTTE, FLEMING & WRIGHT, a Hawai'i partnership, Defendant–Appellant.**

**No. 21062.**

Supreme Court of Hawai'i.

Sept. 18, 1998.

Arthur R. Roeca and David M. Louie of Roeca, Louie & Hiraoka for defendant-appellant.

Paul Alston and Lea Hong of Alston Hunt Floyd & Ing for plaintiffs-appellees.

Before MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

NAKAYAMA, Justice.

Defendant-appellant Cades, Schutte, Fleming and Wright, a Hawai'i partnership (Cades), appeals from an order of the circuit court compelling production of a document. The court ordered Cades to produce a letter over a claim that the letter was protected by the attorney-client privilege.

We dismiss this appeal for lack of appellate jurisdiction. This is an interlocutory appeal and was neither certified by the circuit court under Hawai'i Rules of Civil Procedure (HRCP) Rule 54(b)[1] nor allowed by the circuit court under HRS § 641-1(b) (1993). Cades claims that this is an immediately appealable order under the "collateral order" doctrine. However, the vast weight of authority counsels against the allowance of interlocutory appeals from discovery orders. Because cogent reasons support the result reached by the majority of courts that have considered the issue presented herein, we adopt the rule that there is no appellate jurisdiction over an interlocutory discovery order compelling the production of a document for which a claim of attorney-client privilege was made.

## I. BACKGROUND

In 1990, Plaintiffs Abrams and Blum [hereinafter collectively "Abrams"] filed a lawsuit against trustees of the Linden Associated Growers, Inc., profit sharing trust and pension trust. Cades represented the Trustees. In August 1994, after trial in federal court, Abrams was awarded a judgment against the Trustees in the amount of $751,068.05.

Abrams has, to date, filed three additional federal lawsuits in an attempt to collect the judgment. Abrams has been unable to collect the entire amount due. Subsequent to the entry of the judgment against the Trustees, the Trustees allegedly paid Cades $184,771 in attorneys' fees out of the trust.

On October 11, 1995, Abrams filed the instant action, seeking to void the payment to Cades as a fraudulent transfer and recover the money paid. Upon receiving a request for production of documents, Cades identified a letter from Trustee Julia Di Carlo to Cades regarding a $60,000 transfer, but did not produce the letter, claiming attorney-client privilege. On August 19, 1997, Abrams filed a motion to compel production of documents, or in the alternative for *in camera* inspection, seeking production of this letter. Abrams argued that the attorney-client privilege did not bar production of the letter because (1) an attorney for Cades had stated in a deposition that the letter did not involve a request for legal advice and/or (2) the

---

1. HRCP Rule 54(b) provides that:
   When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties[.]

   This section "attempts to strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." *International Sav. and Loan Ass'n v. Woods*, 69 Haw. 11, 17, 731 P.2d 151, 156 (1987) (citation omitted). "If the trial court intends the judgment to be final as far as those claims or parties are concerned, however, it must so state when a party moves for a declaration of finality pursuant to Rule 54(b); and it must do so in the unmistakable terms demanded by the rule." *Id.* Cades did not seek a certification from the circuit court under this rule.

crime/fraud exception to the privilege applied.[2]

On September 10, 1997, the circuit court heard arguments and conducted an *in camera* inspection of the letter. After the hearing, the court issued a minute order requiring production of the letter by Cades. On October 17, 1997, Cades filed a notice of appeal from this order.[3] On October 24, 1997, Cades filed a motion in circuit court for a stay of the minute order pending appeal. On November 19, 1997, the circuit court entered an order compelling production of the letter. On December 5, 1997, Abrams filed a motion in circuit court for stay of proceedings pending resolution of Cades appeal. On February 9, 1998, the circuit court entered an order granting Abrams' motion for stay, ruling that:

> The Court notes that the Case of [*Abrams v. Cades*], No. 21062 has been entered on the calendar of the Hawaii Supreme Court and a briefing schedule has been set. Due to the pendency of the appeal regarding Defendant's production of a letter dated October 5, 1994 ... and Plaintiffs' inability to conduct meaningful discovery without the letter before the March 30, 1998 trial date, the Court in the exercise of its discretion hereby GRANTS Plaintiffs' motion as follows:
>
> 1. All proceedings in this action are stayed pending completion of Defendant's appeal to the Hawaii Supreme Court.
>
> 2. The March 30, 1998 trial date is vacated.

On May 27, 1998, Abrams filed a motion to dismiss the appeal for lack of appellate jurisdiction. On June 17, 1998, we denied the motion to dismiss the appeal without prejudice to later consideration of the jurisdictional issue as raised in the briefs.

## II. DISCUSSION

HRS § 641-1 (1993) provides that:

(a) Appeals shall be allowed in civil matters from all final judgments, orders, or decrees of circuit and district courts ...

(b) Upon application made within the time provided by the rules of court, an appeal in a civil matter may be allowed by a circuit court in its discretion from an order denying a motion to dismiss or from any interlocutory judgment, order, or decree whenever the circuit court may think the same advisable for the speedy termination of litigation before it. The refusal of the circuit court to allow an appeal from an interlocutory judgment, order, or decree shall not be reviewable by any other court.

■ Cades did not file a motion in circuit court, and no order was entered, allowing this appeal under 641-1(b). We have, in rare situations, considered an interlocutory order so effectively "final" that we have exercised appellate jurisdiction over an appeal that is neither a final judgment nor has been allowed by the circuit court under HRS § 641-1(b). Appellate jurisdiction in these cases is exercised under the "collateral order" doctrine. These interlocutory appeals are limited to

> orders falling "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Association of Owners of Kukui Plaza v. Swinerton*, 68 Haw. 98, 105, 705 P.2d 28, 34 (1985) (quoting *Cohen v. Beneficial Indus.*

---

**2.** Hawai'i Rules of Professional Conduct (HRCP) Rule 1.6(b) provides that "[a] lawyer shall reveal information which clearly establishes a criminal or fraudulent act of the client in furtherance of which the lawyer's services had been used[.]" This is the "crime/fraud" exception to the general rule preventing an attorney from revealing "information relating to representation of a client unless the client consents after consultation[.]" HRCP Rule 1.6(a).

**3.** Although the notice of appeal ostensibly appealed from the minute order filed on October 17, 1997, a minute order is not an appealable order. Pursuant to Hawai'i Rules of Appellate Procedure Rule 4(a)(2), a "notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Therefore, we treat this appeal as being taken from the order compelling production of the letter filed on November 19, 1997.

*Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)).[4]

■ The collateral order doctrine involves a three-part test, all elements of which must be met in order to invoke appellate jurisdiction.

> In order to fall within the narrow ambit of the collateral order doctrine, the "order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."

*Siangco v. Kasadate*, 77 Hawai'i 157, 161, 883 P.2d 78, 82 (1994) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)) (brackets in original).

> Discovery orders provide a superb testing illustration of the final judgment rule at work.... Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process.... Despite the continued assaults of many litigants, *the rule remains settled that most discovery rulings are not final.*

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3914.23 at 123 (emphasis added).

When the discovery order involves a claim of attorney-client privilege, the nearly unanimous view is that there is no appellate jurisdiction under the collateral order doctrine. *See, e.g., Boughton v. Cotter Corp.*, 10 F.3d 746 (10th Cir.1993); *Texaco Inc. v. Louisi-ana Land & Exploration Co.*, 995 F.2d 43 (5th Cir.1993); *Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir.1992); *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed.Cir.1991); *Melia v. Hartford Fire Ins. Co.*, 202 Conn. 252, 520 A.2d 605 (1987).

The United States Court of Appeals for the Tenth Circuit, in *Boughton,* engaged in a coherent analysis of the precise issue presented by this case and determined that the collateral order doctrine did not allow an interlocutory appeal from an order granting a motion to compel production of documents in discovery, despite a claim of attorney-client privilege. The court began with the general rule disfavoring interlocutory appeals.

> District court orders for the production of documents during the course of litigation are not "final orders" subject to immediate appellate review. While recognizing that most interlocutory orders disadvantage or inflict some degree of harm on one of the parties to a litigation, this court must balance that concern against the need for efficient judicial administration, the delay caused by interlocutory appeals, and the burden on appellate courts imposed by fragmentary and piecemeal review of the district court's myriad rulings in the course of a typical case. *Allowing interlocutory appeals before a final judgment on the merits erodes the deference appellate courts owe to the district judge's decisions on the many questions of law and fact that arise before judgment.*

10 F.3d at 748–49 (citations omitted) (emphasis added).

---

4. *Kukui Plaza* held that an order denying a motion to compel arbitration was an appealable order under the collateral order doctrine. *Accord Moss v. American Int'l Adjustment Co. Inc.*, 86 Hawai'i 59, 947 P.2d 371 (1997). The collateral order doctrine was first adopted in Hawai'i in *MDG Supply Inc. v. Ellis*, 51 Haw. 480, 463 P.2d 530 (1969) (holding that an order striking certain documents from the record was not immediately appealable, but a restraining order forbidding a litigant from contacting anyone connected with a foreclosure sale was appealable). The majority of cases in this jurisdiction to date that address the collateral order doctrine have determined that the interlocutory order is *not* appealable. *See Labayog v. Labayog*, 83 Hawai'i 412, 927 P.2d 420, *reconsideration denied* 83 Hawai'i 440, 927 P.2d 448 (App.1996) (order denying petition to remove personal representatives not a collateral order); *State v. Ontiveros*, 82 Hawai'i 446, 923 P.2d 388 (1996) (denial of motion to dismiss on a particular double jeopardy ground not a collateral order); *Siangco v. Kasadate*, 77 Hawai'i 157, 883 P.2d 78 (1994) (sanction order not appealable collateral order); *Brown v. Wong*, 71 Haw. 519, 795 P.2d 283 (1990) (order denying State's motion to dismiss based on sovereign immunity not an appealable collateral order); *Gomes v. Heirs of Kauwe*, 52 Haw. 126, 472 P.2d 119 (1970) (order denying motion to disqualify attorney not appealable under the collateral order doctrine).

The *Boughton* court then applied the three-part collateral order test enumerated in *Cohen.* The court held that the appeal met the first and second prongs of the test, in that it conclusively determined the disputed question and resolved an important issue completely separate from the merits of the action. The court then held that it failed the third prong of the test—because it was not "effectively unreviewable on appeal from a final judgment." The court reasoned that

> the only sense in which the order can be argued to satisfy the third prong of the *Cohen* test is that it exposes to others' view documents that defendants contend should not be so exposed. The practical consequences of the district court's decision on the controversy between the parties can be effectively reviewed on direct appeal following a judgment on the merits. If this court determines that privileged documents were wrongly turned over to the plaintiffs and were used to the detriment of defendants at trial, we can reverse any adverse judgment and require a new trial, forbidding any use of the improperly disclosed documents. Plaintiffs would also be forbidden to offer at trial any documents, witnesses, or other evidence obtained as a consequence of their access to the privileged documents.

10 F.3d at 749. The *Boughton* court therefore dismissed the appeal for lack of appellate jurisdiction.

In considering the identical issue, the Supreme Court of Connecticut in *Melia* also held that it would not exercise appellate jurisdiction to review an order to produce documents for which a claim of attorney-client privilege was raised. The court raised an additional policy consideration, not considered by the *Boughton* court:

> It is true that remand for a new trial resulting from an erroneous order to dis-

close information protected by the privilege cannot wholly undo the consequences of its violation, though the rights of the client in respect to use of privileged material during further proceedings in the litigation can be adequately safeguarded.... The same imperfection in the appellate remedy would be present if the attorney-client privilege were violated, not by a pretrial disclosure order, but by a ruling on evidence during trial, which would have to await final judgment for appellate review unless trials were to be interrupted whenever such a ruling occurred.

520 A.2d at 607.

> The *Melia* court also was concerned that:

> The opportunities for delay that would become available if every disclosure order that might arguably implicate the attorney-client privilege could be appealed before trial are overwhelming to contemplate. The appeal filed in this case from a single disclosure ruling has taken more than eighteen months to resolve, while trial court proceedings have been stalled. We conclude that the occasional violation of the attorney-client privilege that cannot be fully rectified upon review of the final judgment is a lesser evil than that posed by the delay in the progress of cases in the trial court likely to result from interlocutory appeals of disclosure orders.

520 A.2d at 608.

We agree with the reasons and policy considerations enumerated by the above passages. Therefore, we hold that there is no appellate jurisdiction over interlocutory appeals from discovery orders, despite a claim of attorney-client privilege.[5] In the exceptional case, parties are not without a remedy. A petition for writ of mandamus is available for extraordinary situations.[6]

---

5. In *Stafford v. MTL, Incorporated,* 71 Haw. 644, 645–46, 802 P.2d 480, 482 (1990), we held that "if the appeal puts an end to the action, the requirement of speedy termination [in HRS § 641–1(b)] is met. If, on the other hand, the appeal is merely a request for this court to intervene and decide an issue in an unfinished and incomplete case, the requirement is not met." Therefore, even if Cades had moved for certification, and the circuit court had certified this ap-

peal under HRS § 641–1(b) or HRCP Rule 54(b), we would still dismiss it for lack of appellate jurisdiction.

6. A writ of mandamus is

> a writ which issues from a court of superior jurisdiction, and is directed to ... an inferior court, commanding the performance of a particular act therein specified, ... or directing the restoration of the complainant to rights or

One court has recently departed from the majority view and, in a reversal of precedent,[7] determined that it would exercise appellate jurisdiction over a discovery order compelling production of documents against a claim of attorney-client privilege. *In re Ford Motor Company*, 110 F.3d 954 (3d Cir.1997). We are aware of no other jurisdiction adopting the reasoning in *Ford Motor* to date.

The *Ford Motor* court, contra to all other courts that have considered the issue, determined that the collateral order doctrine applied because subsequent appellate review could not restore the damage to confidentiality occasioned by disclosure of privileged documents. The court began with a lengthy discussion of the importance of the interest, pursuant to the second prong of *Cohen*.

> What is important for present purposes is that, in a number of the just-cited cases, the Court felt that, because of the imperative of preventing impairment of some institutionally significant status or relationship, the danger of denying justice by reasons of delay in appellate adjudication outweighed the inefficiencies flowing from interlocutory appeal. By the same calipers, we are convinced that in the present case the orange of the interests protected by the attorney-client privilege (which would be eviscerated by forced disclosure of privileged material) is sufficiently significant relative to the apple of the interests protected by the final judgment rule to satisfy the importance criterion of the second *Cohen* prong.

*Ford Motor*, 110 F.3d at 961.

The court then addressed the third prong.

> [U]nderlying the attorney-client privilege is the policy of encouraging full and frank communications between an attorney and client, without the fear of disclosure, so as to aid in the administration of justice. . . . Appeal after final judgment cannot remedy the breach in confidentiality occasioned by

erroneous disclosure of protected materials.

*Id.* at 963.

We believe that it is uncontrovertible that later appellate review cannot wholly undo the breach of confidentiality occasioned by an erroneous order to disclose privileged information. However, the potential for harm by deferring appellate review is outweighed by the concerns of delay imposed by piecemeal review of the trial court's decisions. Moreover, the trial court's duty is to oversee the discovery process, and this role would be subverted by allowance of interlocutory collateral appeals of its discovery orders.

The trial court in the instant case conducted a hearing, viewed the document *in camera*, and determined that its production was not prohibited by the attorney-client privilege. The concerns about delay occasioned by the allowance of interlocutory, piecemeal litigation, are adequately demonstrated by this appeal. This case has been delayed since at least September 1997. The scheduled trial date of March 1998 was vacated, and all proceedings stayed, solely because of the pendency of the appeal. The parties have expended considerable energy litigating this point and have been sidetracked and delayed from the litigation of the substantive aspects of this case.

"Allowing widespread appeals from collateral orders would frustrate the policy against piecemeal appeals embodied in HRS § 641–1. Thus, we must construe the collateral order doctrine narrowly and be parsimonious in its application." *Siangco*, 77 Hawai'i at 162, 883 P.2d at 83. Privilege is often raised by litigants in opposition to discovery requests. If every order to produce a document over a claim of privilege were immediately appealable, the progress of litigation would be greatly impeded, decreasing judicial efficiency and increasing costs to the parties involved.

---

privileges of which he has been illegally deprived.
Black's Law Dictionary 961 (6th ed.1990).
Hawai'i Rules of Appellate Procedure Rule 21(a) prescribes the procedure for filing a writ of mandamus directed at a judge.

7. In 1994, the Third Circuit held that the collateral order doctrine did not allow an appeal from a discovery order regarding attorney-client privilege. *See Rhone–Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir.1994).

This case requires balancing the danger of breach of the attorney-client privilege against the policy concerns raised by allowance of a collateral appeal of the circuit court's order. After balancing the issues, we hold that there is no appellate jurisdiction over interlocutory appeals of discovery orders regarding the production of documents against a claim of attorney-client privilege.

### III.   CONCLUSION

For the foregoing reasons, we dismiss this appeal for lack of appellate jurisdiction.