**Electronically Filed
Intermediate Court of Appeals
30301
01-SEP-2011
08:04 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

HAWAI'I STATE TEACHERS ASSOCIATION and RAYMOND CAMACHO,
Respondents/Appellants-Appellants,
v.
NEIL ABERCROMBIE, Governor, State of Hawai'i, and
NEIL DIETZ,[1] Chief Negotiator, Office of Collective
Bargaining, State of Hawai'i (2008-042),
Complainants/Appellees-Appellees
and
HAWAII'I LABOR RELATIONS BOARD; JAMES B. NICHOLSON;
ROCK B. LEY; and SESNITA A.D. MOEPONO,[2]
Agency/Appellees-Appellees

NO. 30301

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-0475)

SEPTEMBER 1, 2011

FOLEY, PRESIDING J., FUJISE AND LEONARD, JJ.

---

[1]  Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 43(c)(1), Neil Abercrombie, the current Governor of the State of Hawai'i, and Neil Dietz, the current Chief Negotiator, State of Hawai'i Office of Collective Bargaining, are automatically substituted as Appellees herein in place of Linda Lingle and Marie Laderta, respectively.

[2]  Pursuant to HRAP Rule 43(c)(1), Rock B. Ley and Sesnita A.D. Moepono, the current members of the Board, are automatically substituted as Appellees herein in place of former Board members Emory J. Springer and Sarah R. Hirakami.

OPINION OF THE COURT BY FOLEY, PRESIDING J.

Respondent/Appellant-Appellant Hawai'i State Teachers Association (HSTA) appeals from the Judgment (Judgment) filed on December 16, 2009 in the Circuit Court of the First Circuit[3] (circuit court). The circuit court entered judgment in favor of Agency/Appellee-Appellee Hawai'i Labor Relations Board (HLRB) and Complainants/Appellees-Appellees then-Governor Linda Lingle (Lingle) and then-Chief Negotiator Marie Laderta (Laderta) (collectively, Complainants) and against HSTA pursuant to (1) the "Order Granting Agency-Appellees Hawaii Labor Relations Board, et al.'s Joinder in Complainants-Appellees Linda Lingle and Marie Laderta's Motion to Dismiss Appeal Filed February 26, 2009, Filed on June 4, 2009," filed July 16, 2009 (Order Granting Joinder), and (2) the "Order Granting Complainants-Appellees Linda Lingle and Marie Laderta's Motion to Dismiss Appeal Filed May 18, 2009," filed August 12, 2009 (Order Granting Motion to Dismiss Appeal). The circuit court dismissed HSTA's appeal from HLRB's Order No. 2573 (Order No. 2573) for lack of appellate jurisdiction, determining that Order No. 2573 was not a final decision and order within the meaning of Hawai'i Rules of Civil Procedure (HRCP) Rule 72.

On appeal, HSTA contends:

(1) The circuit court erred by dismissing an appeal from an agency decision and order, which was "final" within the meaning of Hawaii Revised Statutes (HRS) § 91-14(a) (1993), as it determined the rights of the parties under Appendix II (Appendix II) to the July 1, 2007 to June 30, 2009 Collective Bargaining

---

[3] The Honorable Gary W.B. Chang presided.

Agreement (CBA) for collective Bargaining Unit 5 (Unit 5)[4] and HRS Chapter 89.

(2) The circuit court erred by deferring judicial review of a "preliminary" ruling of a nature that deprived HSTA of adequate and timely relief under an agreement on alcohol and drug testing with a June 30, 2009 expiration date.

(3) The circuit court erred by misconstruing and misapplying the collateral order doctrine to resolve claims of rights separable from and collateral to rights asserted on the merits that required immediate judicial review.

(4) HLRB erred by assuming jurisdiction over an untimely prohibited practice complaint filed by Complainants, who lacked standing as an "employer" under Appendix II over alcohol and drug testing procedures.

I.

In November 2006, HSTA and the Employer Group[5] began negotiations over the proposed terms of the CBA. Negotiations pertaining to drug and alcohol testing were referred to a drug and alcohol subcommittee, wherein Guy Tajiri represented the Employer Group and Raymond Camacho (Camacho) represented HSTA. Concurrently, the Hawai'i State Legislature considered Senate Bill 96, which called for reasonable suspicion testing and random testing of Department of Education (DOE) teachers to obtain verifiable information regarding the use of controlled substances. Roger Takabayashi, president of HSTA, testified before the House Committees on Finance, Education, and Labor and Public Employment, and the House Judiciary Committee that the

---

[4] Pursuant to HRS § 89-6(5) (Supp. 2010), Unit 5 employees are: "Teachers and other personnel of the department of education under the same pay schedule, including part-time employees working less than twenty hours a week who are equal to one-half of a full-time equivalent[.]"

[5] For purposes of negotiation of the Unit 5 CBA, the Employer Group members were representatives of the Governor, the Board of Education, and the Department of Education. HRS § 89-2 (Supp. 2010).

bill should be held in committee because HSTA had "already included language in its contractual proposal for a drug testing program designed to achieve the same ends as those set forth in the bill before us."

In April 2007, the drug and alcohol testing subcommittee submitted to the full negotiating committee its proposed "HSTA Bargaining Unit 05 Drug and Alcohol Testing Agreement." The agreement addressed "reasonable suspicion" testing, but made no reference to "random" testing.

On April 11, 2007, the Employer Group submitted the "Employer's Last, Best and Final Offer" in hope of obtaining a tentative agreement with Unit 5. The offer provided in part: "All BU 05 members shall be subject to random controlled substance and alcohol testing, as well as controlled substance and alcohol testing on the basis of reasonable suspicion."

On April 17, 2007, representatives of the Board of Education (BOE), DOE, and HSTA initialed a tentative agreement titled "Memorandum of Understanding Between State of Hawaii[,] Board of Education and Hawaii State Teachers Association (Drug and Alcohol Testing)" (MOU). Pursuant to the MOU, HSTA and BOE agreed to "establish a [sic] reasonable suspicion and random Drug and Alcohol Testing (DAT) procedures applicable to all [Unit 5] employees." HSTA and BOE also agreed that the procedures would "comply with the U.S. Department of Transportation Rules on Drug and Alcohol Testing and/or State Department of Health Rules on Substance Abuse Testing." The parties agreed to implement such a plan no later than June 30, 2008. The MOU was to be effective from July 1, 2007 through June 30, 2009. The parties also initialed a tentative agreement regarding step and 4% "across-the-board" salary increases in 2007, 2008, and 2009; the language in this agreement mirrored the language in the "Employer's Last, Best and Final Offer."

HSTA presented a "Ratification Copy 2007-2009" to its Unit 5 members for approval. The proposed MOU was included in the Ratification Copy as a proposed "new agreement." In addition to including the same wording as proposed in the tentative MOU, the following explanation was provided:

> This MOU allows [HSTA] to work with the Department [sic] to develop specific procedures for <u>random drug testing and reasonable suspicion</u> to ensure due process rights for teachers. Principals will not select teachers for random drug testing, nor will they or the DOE administer or read the results of the testing. An independent, certified laboratory will be contracted to do the testing.
>
> Additionally a bill is moving in the Legislature that requires the DOE to establish procedures for random drug testing and reasonable suspicion, without a guarantee that [HSTA] would be involved.

(Emphasis added.)

On May 2, 2007, HSTA sent a letter, by certified mail, to Lingle, informing her that "[t]he teachers of the [HSTA] have ratified the 2007-2009 [CBA]." The MOU was incorporated as Appendix II in the CBA.

On November 15, 2007, BOE provided HSTA with an initial supplemental agreement regarding drug and alcohol testing procedures, including procedures for random and reasonable suspicion tests. On February 28, 2008 and May 9, 2008, HSTA submitted requests to DOE for "Bargaining Information on Drug and Alcohol Testing." HSTA counter-proposed on June 7, 2008 a supplemental agreement that prohibited BOE from conducting random alcohol testing and limited random drug testing to eight categories of employees. Representatives of HSTA and BOE held numerous negotiations between June 19, 2008 and July 8, 2008. HSTA presented a second draft of its proposed supplemental agreement dated June 30, 2008 to the bargaining team.

On July 17, 2008, HSTA notified DOE Superintendent Patricia Hamamoto (Hamamoto) that it would agree to "reasonable suspicion drug and alcohol testing procedures," but would not agree to "random drug and alcohol testing procedures" due to

5

concerns about possible state and federal constitutional violations. HSTA filed a petition on July 18, 2008 with HLRB for a declaratory ruling as to "the lawful scope of bargaining under applicable state and federal statutes and rules relating to random (or suspicion-less) alcohol and drug testing" of Unit 5 employees.

Also on July 18, 2008, Complainants filed a Prohibited Practice Complaint (Complaint) with HLRB, alleging, inter alia, that HSTA "refused to negotiate procedures for truly 'random Drug and Alcohol Testing (DAT) procedures applicable to all [Unit 5] employees'" and thereby willfully violated HRS § 89-13(b) when HSTA:

a. Refused to bargain in good faith with the public employer as required in section 89-9, HRS;

b. Refused or failed to comply with the provisions of sections 89-9 and 89-10, HRS;

c. Violated the terms of the [CBA] covering the period from July 1, 2007 to June 30, 2009, including but not limited to Articles V, XVII, and XXIII; and

d. Violated the [MOU], entered into on July 1, 2007 by and between the State of Hawaii, [BOE,] and the HSTA and attached as Appendix II to the above-referenced Unit 5 [CBA].

Complainants asked HLRB to order HSTA "to negotiate in good faith the creation of truly random drug and alcohol testing applicable to all [Unit 5] employees."

On July 30, 2008, HSTA filed a Motion to Dismiss Complaint (Motion to Dismiss Complaint), in which HSTA argued lack of standing; failure to name an indispensable party; failure to state a claim for relief regarding collective bargaining as defined in HRS Chapter 89; violation of Hawai'i Administrative Rules (HAR) § 12-42-42(f); and lack of jurisdiction over claims arising more than ninety days prior to July 18, 2008, in violation of HRS § 377-9(1) (1993) and HAR § 12-42-42(a).

On August 1, 2008, Complainants filed a "Motion to Amend Prohibited Practice Complaint Filed July 18, 2008" and on August 8, 2008, they filed a "Motion for Leave to File Second Amended Prohibited Practice Complaint Filed July 18, 2008," which HLRB granted on August 28, 2008. Complainants filed their Amended Prohibited Practice Complaint [Amended Complaint], adding Hamamoto and BOE as additional Complainants and Camacho as a Respondent. The Amended Complaint also included additional allegations against HSTA.

Complainants filed a Motion for Summary Judgment on September 15, 2008. On September 29, 2008, HLRB heard oral arguments on HSTA's Motion to Dismiss Complaint and Complainants' Motion for Summary Judgment. On October 8, 2008, BOE and Hamamoto filed a motion to withdraw as Complainants; HLRB granted the motion on October 15, 2008.

On January 28, 2009, HLRB issued Order No. 2573, denying HSTA's Motion to Dismiss Complaint and Complainants' Motion for Summary Judgment. HLRB found that Complainants had standing to bring their claim; BOE was not an indispensable party; the Complaint had been timely filed; Complainants had stated a claim for relief; and there were genuine issues of material fact, necessitating a hearing in this matter. HLRB scheduled hearings on the merits of the Amended Complaint for March 23 and 24, 2009.

HSTA and Camacho timely filed a Notice of Appeal in the circuit court from Order No. 2573. On March 4, 2009, HSTA and Camacho filed a motion with HLRB to continue the proceedings set for March 23 and 24, 2009, and HLRB issued an order staying the proceedings.

In the circuit court, on May 18, 2009, Complainants filed a "Motion to Dismiss Appeal Filed February 26, 2009" (Motion to Dismiss Appeal). On June 4, 2009, HLRB filed "Agency-Appellees Hawaii Labor Relations Board, et al.'s Joinder in

Complainants-Appellees Linda Lingle and Marie Laderta's Motion to Dismiss Appeal Filed February 26, 2009" (Joinder) and a memorandum in support of Complainants' Motion to Dismiss Appeal.

On June 16, 2009, the circuit court heard Complainants' Motion to Dismiss Appeal and HLRB's Joinder. The circuit court subsequently filed the Order Granting Joinder and Order Granting Motion to Dismiss Appeal.

HSTA filed a Notice of Appeal and, on August 24, 2009, a First Amended Notice of Appeal from the circuit court's Order Granting Joinder and Order Granting Motion to Dismiss Appeal. The appeal was docketed as No. 30003. On December 16, 2009, this court dismissed the appeal for lack of jurisdiction because the circuit court had not reduced the orders to a separate judgment.

On December 16, 2009, the circuit court filed the Judgment, entering judgment in favor of Complainants and against HSTA. HSTA timely appealed.

## II.

### A. SECONDARY APPEAL

"On secondary judicial review of an administrative decision, Hawai'i appellate courts apply the same standard of review as that applied upon primary review by the circuit court." *Kaiser Found. Health Plan, Inc. v. Dep't of Labor & Indus. Relations*, 70 Haw. 72, 80, 762 P.2d 796, 800-01 (1988). For administrative appeals, the applicable standard of review is set forth in [HRS] § 91-14 (2004), which provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)     In violation of constitutional or statutory provisions; or

(2)     In excess of the statutory authority or jurisdiction of the agency; or

(3)     Made upon unlawful procedure; or

(4)     Affected by other error of law; or

> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> HRS § 91-14(g). Pursuant to HRS § 91-14(g)(5), administrative findings of fact are reviewed under the clearly erroneous standard, which requires [the appellate] court to sustain its findings "unless the court is left with a firm and definite conviction that a mistake has been made." *Bumanglag v. Oahu Sugar Co., Ltd.*, 78 Hawai'i 275, 279, 892 P.2d 468, 472 (1995) (block format and citation omitted). Administrative conclusions of law, however, are reviewed under the *de novo* standard inasmuch as they are "not binding on an appellate court." *Id.* (block format and citation omitted). "Where both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency." *Dole Hawaii Div.-Castle & Cooke, Inc. v. Ramil*, 71 Haw. 419, 424, 794 P.2d 1115, 1118 (1990). "To be granted deference, however, the agency's decision must be consistent with the legislative purpose." *Camara v. Agsalud*, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984).

<u>Peroutka v. Cronin</u>, 117 Hawai'i 323, 326, 179 P.3d 1050, 1053 (2008) (brackets in original omitted).

### B. MOTION TO DISMISS

> Review of a motion to dismiss is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable to the plaintiff. Dismissal is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

<u>Bremner v. City & County of Honolulu</u>, 96 Hawai'i 134, 138, 28 P.3d 350, 354 (App. 2001) (internal quotation marks and citation omitted).

### C. INTERPRETATION OF A STATUTE

> The interpretation of a statute is a question of law reviewable de novo.
>
> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

Ka Paʻakai O Kaʻaina v. Land Use Comm'n, 94 Hawaiʻi 31, 41, 7 P.3d 1068, 1078 (2000) (internal quotation marks and citations omitted; block quote format changed).

### D. JURISDICTION

> The question of whether a court has jurisdiction to consider a matter is reviewed applying the right/wrong standard. A party's failure to timely request an agency review hearing not only bars the agency from considering that request, but also precludes the circuit court from considering an appeal of the administrative decision. The agency may not enlarge its powers by waiving or extending mandatory time limits.

Tanaka v. Dep't of Hawaiian Home Lands, 106 Hawaiʻi 246, 249, 103 P.3d 406, 409 (App. 2004) (citations omitted).

### III.

**A. ORDER NO. 2573 WAS NOT A FINAL ORDER WITHIN THE MEANING OF HRS § 91-14(a), AND, THEREFORE, THE CIRCUIT COURT DID NOT ERR BY DISMISSING HSTA'S APPEAL.**

Pursuant to HRS § 91-14(a), an aggrieved party may appeal a final decision or order of an administrative agency:

> (a) Any person aggrieved by a final decision and order in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review thereof under this chapter[.]

(Emphasis added.)

A final order is "an order ending the proceedings, leaving nothing further to be accomplished." Gealon v. Keala, 60 Haw. 513, 520, 591 P.2d 621, 626 (1979). However, "a final judgment or decree is not necessarily the last decision of a case. What determines the finality of an order or decree is the nature and effect of the order or decree." In re Hawaii Gov't Employees' Ass'n, Local 152, AFSCME, AFL-CIO, 63 Haw. 85, 88, 621 P.2d 361, 364 (1980) (quoting In re Application of Castle, 54 Haw. 276, 278, 506 P.2d 1, 3 (1973). "[A]n order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." Gealon, 60 Haw. at 520,

591 P.2d at 626. In addition, "[t]he denial of a motion to dismiss is generally not considered a final order." City of Park Hills v. Public Serv. Comm'n of State of Mo., 26 S.W.3d 401, 404 (Mo. Ct. App. 2000).

HSTA contends that Order No. 2573 was a final order because HLRB determined the substantive rights of the parties when it found that (1) Complainants had stated a claim for relief, (2) Complainants had standing to bring their claim, (3) HLRB had jurisdiction to hear the claims, and (4) the requested relief did not violate the definition of collective bargaining.

Contrary to HSTA's contention that Order No. 2573 left nothing further to be determined, the order shows otherwise. In the order, HLRB set an evidentiary hearing for March 23 and 24, 2009 "to determine whether there has been bad faith during negotiations, and if there had been repudiation of the [CBA], whether any repudiation was wilful." Clearly, the matter was retained for further action, and the rights of the parties remained undetermined because the evidentiary hearing had yet to be held. See Gealon, 60 Haw. at 520, 591 P.2d at 626.

The circuit court did not err when it determined it did not have jurisdiction because Order No. 2573 was not a final order.

B.    **HSTA DID NOT ARGUE IN THE CIRCUIT COURT THAT ORDER NO. 2573 WAS A "PRELIMINARY" RULING.**

Pursuant to HRS § 91-14(a), an appealable "preliminary ruling" is one that is "of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief." HSTA contends the circuit court deprived HSTA of adequate relief under HRS Chapter 89 when the court declined to review the merits of Order No. 2573 as a "preliminary ruling." HSTA argues that the circuit court "failed to consider whether the preliminary ruling was of such a nature" that deferring review would deprive HSTA of adequate relief.

11

Although HSTA cites to the record below where it claims it argued that the circuit court should consider the effect of the preliminary ruling, we find no such argument in the record. HSTA cites to its April 27, 2009 opening brief in the circuit court, where HSTA argued the issues of standing and indispensable party, but did not raise the issue of preliminary ruling. HSTA's reply brief referred only to those same two issues. At the circuit court hearing on June 16, 2009, HSTA identified the issues before the circuit court as follows: "[W]e're asking the Court to find that [Order No. 2573] either is a final order, because of the context in which the order is made; or two, that it's a collateral order, which will allow [time] to have an appeal, a timely appeal, at the present." Again, HSTA did not ask for the circuit court to consider whether the order was a preliminary ruling. Not until its opening brief before this court did HSTA argue that Order No. 2573 was a "preliminary ruling" meriting immediate review to resolve the "controversy over a prohibited practice so it could implement the fruits of its bargaining effort" with BOE before Appendix II expired on June 30, 2009.

If an issue is not raised below, the appellate court will not consider it except as justice so requires. <u>Bitney v. Honolulu Police Dep't</u>, 96 Hawaiʻi 243, 251, 30 P.3d 257, 265 (2001). Because HSTA did not argue "preliminary ruling" in the court below and justice does not require this court to consider the point on appeal, we decline to do so.

C.   **THE CIRCUIT COURT DID NOT MISCONSTRUE AND MISAPPLY THE COLLATERAL ORDER DOCTRINE.**

HSTA contends that Order No. 2573 was immediately reviewable because it resolved "claims of rights separable from and collateral to rights asserted on the merits which required immediate judicial review" under the collateral order doctrine.

Generally, under the final judgment rule, an interlocutory order is not appealable. MDG Supply, Inc. v. Ellis, 51 Haw. 480, 481, 463 P.2d 530, 531 (1969). The collateral order doctrine is a narrow exception to the final judgment rule, Siangco v. Kasadate, 77 Hawai'i 157, 161, 883 P.2d 78, 82 (1994), and to avoid piecemeal appeals, a court should "be parsimonious in its application." Id. at 83, 883 P.2d at 162. The collateral order doctrine applies to

> orders falling "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
>
> Association of Owners of Kukui Plaza v. Swinerton [& Walberg Co.], 68 Haw. 98, 105, 705 P.2d 28, 34 (1985) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69 S. Ct. 1221, [1225-26] (1949)).

Abrams v. Cades, Schutte, Fleming & Wright, 88 Hawai'i 319, 321, 966 P.2d 631, 633-34 (1998) (footnote omitted).

In rare instances, the appellate courts will consider an interlocutory appeal that meets the collateral order doctrine's three-pronged test.

> In order to fall within the narrow ambit of the collateral order doctrine, the "order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."
>
> Siangco v. Kasadate, 77 Hawai'i 157, 161, 883 P.2d 78, 82 (1994) (quoting Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S. Ct. 2454, [2458] (1978)) (brackets in original).

Id. at 322, 966 P.2d at 634.

Here, HSTA contends that Order No. 2573 meets the three-pronged test. HSTA maintains that under the first prong, the order conclusively determined issues HSTA raised in its Motion to Dismiss Complaint, specifically: (1) HLRB had jurisdiction over the Amended Complaint, (2) Complainants had standing, and (3) BOE was not an indispensable party. Regarding

the second prong, HSTA states that Order No. 2573 resolved the issues of standing and indispensable party, which were completely separate from the merits of the case and the claim that HSTA bargained in bad faith.  HSTA maintains that under the third prong, the order would be effectively unreviewable on appeal because HSTA's rights pursuant to HRS Chapter 89 "would be lost." HSTA argues that its rights would be violated if it had to defend against charges of bargaining in bad faith, only to have the court determine on appeal of a final judgment that a party to the proceedings did not have standing or an indispensable party was not present.

Because the collateral order doctrine test is set out in the conjunctive, if one prong is not met, HSTA's argument fails.  Abrams, 88 Hawai'i at 322, 966 P.2d at 634 ("The collateral order doctrine involves a three-part test, all elements of which must be met in order to invoke appellate jurisdiction.").

HSTA fails to satisfy the first prong in that Order No. 2573 did not conclusively determine the disputed question. When HLRB considered HSTA's Motion to Dismiss Complaint, HLRB had to accept Complainants' allegations in the Complaint as true and interpret the allegations in the light most favorable to Complainants.  Bremner, 96 Hawai'i at 138, 28 P.3d at 354.  HLRB scheduled an evidentiary hearing, during which the parties would be able to raise those issues again.  Thus, HLRB did not conclusively determine disputed questions, and the first prong is not met.

The third prong of the collateral order doctrine rule also is not met.  To satisfy the third prong, Order No. 2573 would have to be effectively unreviewable on appeal from HLRB's final judgment.  The three issues that HSTA contends meet the collateral order doctrine -- HLRB's jurisdiction, Complainants'

standing, and the indispensable party status of BOE -- are all issues that HSTA can raise on appeal to the circuit court.

To satisfy the second prong, the issues of standing and indispensable party status must be able to be resolved completely separate from the underlying issues of whether HSTA repudiated the CAB and negotiated in bad faith. Although HSTA may be able to satisfy the second prong, because the first and third prongs of the collateral order doctrine test are not met, we need not address the second prong. Order No. 2573 is not a collateral order and the circuit court did not misconstrue or misapply the collateral order doctrine.

D. **THIS COURT DOES NOT HAVE JURISDICTION TO ADDRESS HSTA'S POINT ON APPEAL THAT HLRB ERRED BY ASSUMING JURISDICTION OF THE AMENDED COMPLAINT.**

HSTA contends that Complainants were not involved in the bargaining process over alcohol and drug testing procedures under Appendix II and therefore lacked standing to file the Complaint. HSTA also contends the Complaint was untimely filed. Based on Complainants' alleged untimely filing and lack of standing, HSTA argues that HLRB erred when it determined it had jurisdiction over the Complaint.

In this point on appeal, HSTA asks this court to review some of the very issues of HLRB's Order No. 2573 that the circuit court determined it did not have jurisdiction to review. "On secondary judicial review of an administrative decision, Hawaii appellate courts apply the same standard of review as that applied upon primary review by the circuit court." Kaiser Found. Health Plan, Inc. v. Dep't of Labor & Indus. Relations, Unemployment Ins. Div., 70 Haw. 72, 80, 762 P.2d 796, 800-01 (1988). Having concluded that the circuit court did not err when it found it lacked jurisdiction to review Order No. 2573 until a final order and decision had been entered, we conclude we also lack jurisdiction to review the order.

IV.

The Judgment filed on December 16, 2009 in the Circuit Court of the First Circuit is affirmed.


On the briefs:

Herbert R. Takahashi
Rebecca L. Covert
(Takahashi Vasconcellos &
Covert)
for Respondents-Appellants/
Appellants.

James E. Halvorson
Richard H. Thomason
Deputy Attorneys General
for Complainants-Appellees/
Appellees.

Valri Lei Kunimoto
for Agency-Appellees/
Appellees.