100 P.3d 77

**In the Matter of the Protection of the Property of Michele ADAM, the Protected Person.**

**No. 24926.**

Intermediate Court of Appeals of Hawai'i.

Oct. 4, 2004.

Mark Van Pernis (Van Pernis, Smith & Vancil), on the briefs, Kailua Kona, for Petitioner–Appellee.

Shawn A. Luiz, on the briefs, for Respondent–Appellant.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Appellant–Respondent Richard Adam (Richard Adam) appeals from the following orders and judgments, entered in the Circuit Court of the Third Circuit: [1]

(1) The May 3, 2001 Order Granting Motion for Approval of Sale of Real Property authorizing the sale of the Hawaiian Ocean View Estates (HOVE or H.O.V.E.) property for $35,000 to Robert Drake pursuant to a March 14, 2001 Deposit Receipt Offer and Acceptance (March 14, 2001 DROA)

(2)(a) The January 29, 2002 Order and Entry of Final Judgment on Petitioner Gloria Poorman's Motion for Order to Show Cause Why Respondent Richard Adam Should Not Be Held in Contempt of Court and for a Final Judgment Thereon Filed Herein on December 14, 2000 and Affidavit of Costs and Fees Re Petitioner Gloria Poorman's Motion for Order to Show Cause Why Respondent Richard Adam Should Not Be Held in Contempt of Court and for a Final Judgment Thereon Filed Herein on February 22, 2001, that, in relevant part, "finds ... Richard [Adam] in contempt of court and awards fees and costs of $1,000.00 to Van Pernis, Smith and Vancil and against ... Richard Adam," and

(b) The January 29, 2002 Final Judgment in the amount of $1,000.00 in favor of attorneys Van Pernis, Smith and Vancil and against Richard Adam.

For lack of appellate jurisdiction, we dismiss the appeal of (1). In light of plain error, we vacate (2)(a) and (b) and remand for reconsideration in the light of this opinion.

1. The Honorable Greg K. Nakamura presided.

## BACKGROUND

The first numbered paragraph of the August 28, 2000 "Petitioner's Findings of Fact, Conclusions of Law, Order and Judgment" (August 28, 2000 FsOF, CsOL, Order and Judgment) states as follows: "Michele Adam disappeared in June, 1998 leaving behind a child ..., a husband (the Respondent Richard Adam), and an estate consisting of various items of real and personal property the ownership of which is in dispute in this trial."

On March 19, 1999, Michele Adam's mother, Gloria Poorman (Petitioner), filed a petition, pursuant to Hawaii Revised Statutes (HRS) §§ 560:1–102 and 603–36, asking the court to appoint her as the guardian of Michele Adam's property. On May 7, 1999, Richard Adam filed a petition asking the court to appoint him as the guardian of Michele Adam's property. On July 14, 1999, pursuant to the stipulation of the parties, the court entered an order appointing Stephen Arnett as the independent third-party guardian of the property of Michele Adam. On July 20, 1999, the court filed Letters of Guardianship: Property.

A trial occurred on February 15, 2000. Essentially, it pertained to a dispute as to what property was owned by Michele Adam.

On May 30, 2000, Stephen Arnett (the Guardian) filed a "Motion ... for Further Instructions and Reimbursement for Amounts Expended by the Guardian" in which he stated, in relevant part, as follows:

> [O]n August 23, 2000, the Guardian paid the real property taxes for all real property in the name of the protected person Michele Adam. Subsequent to the payment of the real property taxes, this Court awarded the Milolii real property [to] Richard Adam. The Guardian is moving the Court to order [Richard Adam] to reimburse the estate of Michele Adam the sum of $344 for the real property taxes expended on behalf of [Richard Adam]. See Exhibit "A" for a copy of the real property tax receipt.

In addition, the Guardian expended $482.96 to remove the carcass of the house that had burnt to the ground on the Milolii property. Said removal was at the request of the neighbors and suggestion of both the County of Hawaii Fire Department and Police Department. As a result, the Guardian engaged South Kona Hauling Company to remove said burnt lumber, etc. from the Milolii property.

The removal work was performed free by the owner of a bulldozer that was working next to the house carcass. The costs involved were rental and hauling of the thirty-five foot garbage container to the dump. See Exhibit "B", for a copy of the receipt.

Summary

. . . .

2. The Guardian requests that the Court order Richard Adam to reimburse the estate of Michele Adam for funds expended on his behalf for real property taxes ($344) and the removal of the burnt carcass of [Richard Adam's] former house in Milolii ($482.96) or a total of $826.96.

On July 10, 2000, the court entered an Order Granting Motion by Guardian for Further Instructions and Reimbursement for Amounts Expended by Guardian Filed May 30, 2000 and Entering Final Judgment Thereon (July 10, 2000 Order). This order states, in relevant part, as follows:

[T]he MOTION . . . is granted subject to the following terms and conditions:

A. . . . Richard Adam shall remove all his personal property and vehicles from the H.O.V.E. real property . . . (i.e.-by no later than July 16, 2000);

B. . . . Richard Adam is hereby ordered to pay the Guardian all of the following sums and expenses:

 i) the sum of $334.00 dollars for real property taxes paid by the Guardian for the Milolii property;

 ii) the sum of $482.96 for clean-up and removal costs incurred by the Guardian for the Milolii property;

C. . . . Richard Adam is further ordered to pay the Estate of the Protected Person, [Michele] Adam storage rent in the amount of $8.00 per day from May 3, 2000 until the day all of . . . Richard Adam's personal property and vehicles are removed from the H.O.V.E. property by [Richard Adam] or the action of the Guardian referred to below.

D. If . . . Richard Adam fails and/or refuses to remove any of his personal property and vehicles from the H.O.V.E. real property within the thirty (30) day time period referred to above, the Guardian is hereby authorized to and shall sell or otherwise liquidate the property and vehicles of [Richard Adam] remaining on the H.O.V.E. property in whatever manner the Guardian deems appropriate, and to apply the funds collected from such sale or liquidation towards satisfaction of the foregoing awards to the Guardian and to the Estate of the Protected Person, Michele Adam. To the extent that any balance remains after satisfying the foregoing awards such balance shall be paid to [Richard Adam].

E. In the event that any of the above referred to amounts ordered to be paid by [Richard Adam] are not fully paid by [Richard Adam] for any reason, judgment(s) shall be issued against [Richard Adam] and in favor of the Guardian and/or the said Estate by this Court upon application and adequate proof and prior notice of such application to all parties.

The August 28, 2000 FsOF, CsOL, Order and Judgment states, in relevant part, as follows:

And the Court having reviewed and considered the record herein, the documentary evidence and testimony presented at trial and the representations and arguments of the parties made through their respective attorneys, hereby makes the following Findings of Fact and Conclusions of Law and enters Final Judgment thereon:

. . . .

2. The first item is a house and real property located in Hawaiian Ocean View Estates and identified with TMK No. (3) 9–2–37:04 (hereinafter the H.O.V.E. house and property"). Pursuant to a Warranty Deed, dated May 30, 1989 and recorded in the Hawaii Bureau of Conveyances on June 28, 1989, at Liber 23340, Page 230

[Michele] Adam has legal title to this H.O.V.E. house and real property.

3. There was no subsequent conveyance or transfer of the H.O.V.E. house and property.

4. Therefore the court finds that the H.O.V.E. house and property is owned by Michele Adam individually.

5. The next item in dispute is real property located in Milolii, Hawaii and identified with T.M.K. (3) 9–8–006:007 and 008.

6. Pursuant to a Quitclaim Deed dated November 16, 1996 and recorded in the Hawaii Bureau of Conveyances on November 29, 1996 as Document No. 96–169471, this property belongs to [Michele] Adam.

7. However, pursuant to a Quitclaim Deed dated January 27, 1997 [Michele] Adam purported to transfer this Milolii property to herself.

8. This January 27, 1997 Quitclaim deed contains an ambiguity. More specifically, in the first paragraph of the deed, [Michele] G. Adam is identified as the grantor and Richard Louis Adam is identified the grantee. However, in the second paragraph of the deed the conveyance is made to Michele G. Adam.

9. Based upon rules of construction the court finds that it was the intent of [Michele] Adam to convey this Milolii property to Richard Adam.

10. The testimony of Ernest Gianotti, the attorney who drafted the deed and Kristen Ellis, the Notary Public who notarized the deed indicated that Michele Adam intended to convey the Milolii property to Richard Adam.

11. Based upon the evidence presented the court finds that [Michele] Adam intended by the Quitclaim deed to convey the Milolii property to Richard Adam.

12. The quitclaim deed for the Milolii property was produced by Richard Adam.

13. Based on the evidence presented the court finds the January 27, 1997 Quitclaim deed produced by Richard Adam is an original deed.

14. Richard Adam further testified that this deed was in his possession and there was no testimony that Michele Adam did not intend to relinquish all right of control over the deed.

15. Therefore, based on the evidence presented the court finds that [Michele] Adam delivered the deed to Richard Adam.

16. Based on the evidence presented the court finds that the Milolii property is not owned by the Estate of [Michele] Adam.

17. There are in issue three motor vehicles, a 1985 Ford pickup truck, a 1993 Toyota pickup, and a 1995 Toyota Celica, all previously registered in the name of Michele Adam.

18. Title to motor vehicles is governed by HRS § 286–14(a), 47 and 52(e).

19. The vehicles are located in the County of Hawaii and no new certificates of registration or ownership have been presented in evidence, such that HRS § 286–52(e) mandates that title remains with Michele Adam.

20. The boat in issue was given to Richard Adam, as evidenced by a bill of sale; and given the presumption of a gift that applies in cases of close kinship and the absence of proof to rebut the presumption, it is found as fact that a gift was intended and completed.

21. Of the remaining items of personal property, the only evidence of ownership establishes that Michele Adam owned only a bed, a square table and a chest of drawers.

### CONCLUSIONS OF LAW

1. RICHARD LOUIS ADAM is the true owner of the following property:

a. The Milolii property bearing Tax Map Key parcel number (3) 8–8–006:007 and 008;

b. The boat; and

c. The remainder of the personality [sic] located at the [H.O.V.E.] property, save and excepting a bed, a square table, a chest of drawers and the fixtures associated with the house.

2. MICHELE ADAM is the true owner of the following property:

a. The real estate located at [H.O.V.E.] and bearing Tax Map Key parcel number (3)9–2–37:047 and all the fixtures associated with the house;

b. The three vehicles (1995 Ford pickup truck, 1993 Toyota pickup truck, and 1995 Toyota Celica two door sedan); and

c. A bed, a square table and a chest of drawers.

Based on the foregoing Findings of Fact and Conclusions of Law it is HEREBY ORDERED, ADJUDGED AND DECREED that:

1. The Estate of Michele Adam owns the [H.O.V.E.] property, Tax Map Key parcel number (3)9–2–37:047 the house thereon and all fixtures associated with the house. The Guardian is authorized and directed to sell the said property as soon as is practicable, in a commercially reasonable manner, for a price not less than $45,000.00.

2. Richard Adam is the owner of the Milolii property Tax Map Key parcel number (3) 8–8–006:007 and 008, pursuant to a quitclaim deed dated January 27, 1997, by which Michele Adam conveyed her interest to Richard Adam.

3. The Estate of Michele Adam owns the following items of personal property:

a. A 1985 Ford pickup truck;

b. A 1993 Toyota pickup truck;

c. A 1995 Toyota Celica sedan;

d. A bed, a square table, a chest of drawers, all of which are presently in the actual or constructive possession of the Guardian. The Guardian is hereby authorized and directed to sell the said property as soon as is practicable, in a commercially reasonable manner, for their market value.

The remainder of the personal property at issue is owned by Richard Adam, and he may dispose of it as he pleases.

That a separate Final Judgment be entered pursuant to Rule 58 of the Hawaii Rules of Civil Procedure [HRCP] as set forth herein.[2]

On August 28, 2000, the court entered a separate Final Judgment consistent with the August 28, 2000 FsOF, CsOL, Order and Judgment.

On September 19, 2000, notwithstanding the fact that the court had entered a separate Final Judgment against Richard Adam for the amounts in question, the Guardian filed a Motion by Guardian for Further Instructions, Payment for Services Rendered and Reimbursement for Amounts Expended by the Guardian. This motion (a) did not mention the August 28, 2000 Final Judgment and (b) stated, in relevant part, as follows:

On June 16, 2000, this Court ... ordered that ... Richard Adam pay the Estate of the Protected Person, Michele Adam the sum of $334.00 for real property taxes and $482.96 for the clean-up and removal costs incurred by the Guardian for the Milolii property.

To date those sums remain unpaid by [Richard Adam].

In addition, [Richard Adam] removed the water pump from the HOVE property when he moved his personal belongings from said property in April, 2000. In addition, [Richard Adam] removed the photovoltaic solar panels, the three batteries and invertor that provided power and water to the HOVE house.

Subsequent to removal of said items, [Richard Adam] returned the solar panels, but has not returned the water pump, batteries or invertor.

The Guardian moves this Court for further instructions as to how to return the HOVE property to its prior status, with working electricity and running water, **installed.**

(Emphasis in original). In addition, the Guardian requested that the court approve "payment for services rendered to the Guardianship" and "reimbursement of funds expended by the Guardian from his own personal funds on behalf of the Guardianship[.]"

---

**2.** This paragraph of the document contradicts the last four words of the first sentence of the document. That first sentence states, in relevant part: "And the Court ... hereby makes the following Findings of Fact and Conclusions of Law and enters Final Judgment thereon[.]"

He requested $2,539.07 in compensation and a $1,291.67 reimbursement.

On October 26, 2000, after a hearing by teleconference on October 5, 2000, the attorney for Petitioner submitted a proposed "Order Granting Motion by Guardian for Further Instructions, Payment for Services Rendered and Reimbursement of Amounts Expended by the Guardian and Entering Final Judgment on Amounts Owed to Estate." It stated approval of the following:

$2,539.07 The Guardian's requested fee;

$1,291.67 The Guardian's requested reimbursement; and

$ 966.96 The claim by the Estate of Michele Adam against Richard Adam for the following: $334 real property taxes and clean up costs, $482.96 clean up and removal costs, and $150 to replace the three batteries and invertor that Richard Adam wrongfully removed from the Estate's property.

It also concluded, in relevant part, that "[b]ased on the foregoing, the Estate of Michele Adam is awarded the total sum of NINE HUNDRED SIXTY–SIX AND 96/100 DOLLARS ($966.96) against ... RICHARD ADAM and final judgment shall issue in favor of the Estate and against Richard Adam in this amount in the form attached hereto as Exhibit 'A'." Exhibit "A" was worded "in favor of THE ESTATE OF MICHELE ADAM and against RICHARD ADAM, in the total amount of FORTY–THREE THOUSAND FIVE HUNDRED SEVENTY–SEVEN AND 33/100 DOLLARS ($43,577.33)." It appears that the error in the amount of this proposed "Final Judgment" was recognized when, on November 1, 2000, the attorney for Petitioner filed an "Amended Notice of Submission" of a proposed "Final Judgment" in favor of the Estate of Michele Adam and against Richard Adam in the amount of $966.96.

On November 17, 2000, the court, without making any changes to the document as presented, entered the Order Granting Motion by Guardian for Further Instructions, Payment for Services Rendered and Reimbursement for Amounts Expended by the Guardian and Entering Final Judgment on Amounts Owed to Estate.

Also on November 17, 2000, the court entered two final judgments against Richard Adam. Both were in favor of the Estate of Michele Adam. One was in the amount of $43,577.33 and the other was in the amount of $966.96. Obviously, the court erred when it entered the judgment in the amount of $43,577.33. There is no indication in the record that this error has been corrected. The judgment in the amount of $966.96 states as follows:

### FINAL JUDGMENT

Pursuant to the ORDER GRANTING MOTION BY GUARDIAN FOR FURTHER INSTRUCTIONS, PAYMENT FOR SERVICES RENDERED AND REIMBURSEMENT FOR AMOUNTS EXPENDED BY THE GUARDIAN AND ENTERING FINAL JUDGMENT ON AMOUNTS OWED TO ESTATE filed herein.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that pursuant to the ORDER GRANTING MOTION BY GUARDIAN FOR FURTHER INSTRUCTIONS, PAYMENT FOR SERVICES RENDERED AND REIMBURSEMENT FOR AMOUNTS EXPENDED BY THE GUARDIAN AND ENTERING FINAL JUDGMENT ON AMOUNTS OWED TO ESTATE, Final Judgment is entered pursuant to Rule 58 of the Hawaii Rules of Civil Procedure in favor of THE ESTATE OF MICHELE ADAM and against RICHARD ADAM, in the total amount of NINE HUNDRED SIXTY–SIX AND 96/100 DOLLARS ($966.96).

On December 14, 2000, Petitioner filed a Motion for Order to Show Cause Why Respondent Richard Adam Should Not Be Held in Contempt of Court and for a Final Judgment Thereon. The memorandum filed in support of the motion argued the following:

1) In the [August 28, 2000 FsOF, CsOL, Order and Judgment] this court determined that the HOVE property *and its fixtures* were owned by the Estate of [Michele] Adam. . . .

2) As set forth in detail in this court's order entered on November 17, 2000 on the Motion By Guardian for Further Instructions this court found [Richard Adam] had wrongfully removed the water pump, three batteries and an invertor that supplied the electricity for the HOVE home.

3) Accordingly, [Richard Adam] should be held in contempt of court for wrongfully removing these *fixtures* from the [HOVE] property in direct violation of this Court's Findings of Fact Conclusions of Law and Judgment.

4) It is important to note that [Richard Adam's] attorney previously argued to the Court that there is no concrete evidence that [Richard Adam] actually took any of the fixtures. However, as this Court will recall from the hearing on the motion ... the Guardian and [Richard Adam's] own attorney both reported that originally there were other fixtures missing from the HOVE property and once the Guardian told [Richard Adam] these items had to be returned [Richard Adam] returned some of the fixtures, such as the missing solar panels. [Richard Adam's] return of some, but not all of the missing fixtures, after he was told to do so, demonstrates that [Richard Adam] was responsible for the missing fixtures.

5) Further, in this Court's prior Order Granting Motion by Guardian for Further Instructions and Reimbursement for Amounts Expended by Guardian Filed May 30, 2000 and Entering Final Judgment Thereon entered July 10, 2000 (hereinafter ["]the July 10, 2000 Order") this court ordered as follows:

... Richard Adam was ordered to pay the Guardian all of the following sums and expenses:

i) the sum of $334.00 dollars for real property taxes paid by the Guardian for the Milolii property;

ii) the sum of $482.96 for clean-up and removal costs incurred by the Guardian

for the Milolii property *for a total amount owed by [Richard Adam] to the Guardian of $816.96* ....

6) As reflected in this Court's last order of November 17, 2000.... [Richard Adam] never did pay the amounts he owed to the Guardian and this failure and/or refusal is in direct violation of this court's prior July 10, 2000 Order and necessitated further collection efforts.... Accordingly, the Court should now hold [Richard Adam] in contempt of court for failing and/or refusing to *timely* reimburse the Guardian as he was ordered to do by this court.

7) In the Court's exercise of its contempt powers Petitioner respectfully requests that under these facts the court's sanctions should include, amongst other sanctions that the court may deem appropriate, a specific award to Petitioner for all the costs and fees Petitioner incurred in bringing the instant Motion against [Richard Adam]. An appropriate declaration of undersigned counsel regarding the total amount of fees and costs incurred by Petitioner for this Motion and the hearing to be held herein will be filed following the court's ruling on this Motion.[3]

· 8) Finally, Petitioner moves the court to determine the total amounts owed by [Richard Adam] to Petitioner or to the court or others for contempt of court and for issuance of an appropriate Final Judgment(s) on all such amounts.

9) It is respectfully submitted that entering an appropriate contempt order and issuing a Final Judgment on the amounts awarded is the only way to ensure [Richard Adam's] compliance with this court's orders since [Richard Adam] has repeatedly chosen to .ignore and/or directly violate this court's express and unambiguous orders.

(Footnote added.)

On March 21, 2001, the Guardian filed a Motion for Approval of Sale of Real Property asking the court to approve the sale of the

---

**3.** In the Affidavit of Costs and Fees Re Petitioner Gloria Poorman's Motion for Order to Show Cause Why Respondent Richard Adam Should Not Be Held In Contempt of Court and for a Final Judgment Thereon, David E. Smith, attorney for Petitioner Gloria Poorman (Petitioner), stated that, as a result of the action, Petitioner has incurred legal fees of $1,512.90 and costs of $68.54.

HOVE property to Robert Drake for $35,000. On March 30, 2001, Petitioner Gloria Poorman's Statement in Support of Guardian's Motion for Approval of Sale of Real Property Filed Herein on March 21, 2001 was filed. The hearing on this motion occurred on April 5, 2001. On April 23, 2001, Richard Adam prematurely filed a notice of appeal "from the Court's order approving the sale of the HOVE property." On May 3, 2001, the court entered the Order Granting Motion for Approval of Sale of Real Property (May 3, 2001 Order) authorizing the sale of the HOVE property, TMK (3) 9–2–037:047, for $35,000 to Robert Drake pursuant to a March 14, 2001 DROA. In appeal no. 24224, on July 23, 2001, the Hawai'i Supreme Court entered an Order Dismissing Appeal of the May 3, 2001 Order on the ground that "a final judgment closing the proceeding has not been entered" and "the May 3, 2001 order approving the sale of real property, . . . is an interlocutory order that was not certified for interlocutory appeal[.]"

On June 19, 2001, the Guardian filed a Notice of Close of Escrow on H.O.V.E. Property.

On January 29, 2002, the court entered its Order Re: Gloria Poorman's Motion for Fees and Costs and to Establish a Trust for Remainder of Estate Funds filed herein on October 18, 2001 (January 29, 2002 Order Re: Motion for Fees and Costs). This order states that the court

HEREBY ORDERS, ADJUDGES AND DECREES as follows:

1. Van Pernis, Smith and Vancil ("Van Pernis") is awarded fees of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00) from the Estate.

2. Since the fees of Van Pernis have previously been paid by Petitioner the foregoing amount shall be immediately paid by the Guardian from the estate funds directly to Petitioner[.]

On January 29, 2002, the court entered its Order and Entry of Final Judgment on Petitioner Gloria Poorman's Motion for Order to Show Cause Why Respondent Richard Adam Should Not Be Held in Contempt of Court and for a Final Judgment Thereon filed herein on December 14, 2000 and Affidavit of Costs and Fees Re Petitioner Gloria Poorman's Motion for Order To Show Cause Why Respondent Richard Adam Should Not Be Held in Contempt of Court and for a Final Judgment Thereon filed herein on February 22, 2001 (January 29, 2002 Order Re: Motion for Order to Show Cause). This order states as follows:

1. . . . Richard Adam violated this court's prior orders by:

a) wrongfully removing certain *fixtures* from the property this court had previously determined belonged to the Estate of Michelle Adam (e.g., the ["HOVE] Property") in violation of the [August 28, 2000 FsOF, CsOL, Order and Judgment]; and

b) by failing and/or refusing to timely reimburse the Guardian for all of the sums and expenses that this Court had ordered [Richard Adam] to pay the Guardian in violation of this Court's Order dated July 10, 2000.

2. Accordingly, the court finds . . . Richard Adam[ ] in contempt of court and awards fees and costs of $1,000.00 to Van Pernis, Smith and Vancil and against . . . Richard Adam.

Based on the foregoing Findings and Conclusions it is HEREBY ORDERED, ADJUDGED AND DECREED that:

1. . . . Richard Adam[ ] is in contempt of court and fees and costs of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00) are awarded to Van Pernis, Smith and Vancil and against . . . Richard Adam.

2. That a separate Final Judgment shall be entered pursuant to Rule 58 of [HRCP] as set forth herein.

On January 29, 2002, the court entered the following:

### *FINAL JUDGMENT*

Pursuant to the ORDER AND ENTRY OF FINAL JUDGMENT ON PETITIONER GLORIA POORMAN'S MOTION FOR ORDER TO SHOW CAUSE WHY RESPONDENT RICHARD ADAM SHOULD NOT BE HELD IN CONTEMPT OF COURT AND FOR A FI-

NAL JUDGMENT THEREON filed herein on December 14, 2000 and AFFIDAVIT OF COSTS AND FEES RE PETITIONER GLORIA POORMAN'S MOTION FOR ORDER TO SHOW CAUSE WHY RESPONDENT RICHARD ADAM SHOULD NOT BE HELD IN CONTEMPT OF COURT AND FOR A FINAL JUDGMENT THEREON FILED HEREIN ON December 14, 2000 filed herein on February 22, 2001.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Final Judgment is entered pursuant to Rule 58 of the [HRCP] in favor of VAN PERNIS, SMITH AND VANCIL and against RICHARD ADAM, in the total amount of ONE THOUSAND AND NO/100 DOLLARS ($1,000.00.)

On February 19, 2002, Richard Adam filed a notice of appeal from the two January 29, 2002 orders, the January 29, 2002 Final Judgment, and "the whole case".

## APPELLATE JURISDICTION

In guardianship proceedings, an appeal may be taken from: (1) judgments on orders establishing guardianships and protective arrangements, HRS §§ 560:5–401 and 560:5–409; (2) a final judgment closing the proceeding, Hawai'i Probate Rules (HPR), Rule 34(c); (3) an order that "fully addresses all claims raised in a petition to which it relates, but that does not finally end the proceeding" that is certified for appeal in the manner provided for by HRCP Rule 54(b) and reduced to a separate certified judgment, HPR 34(a) and (d); and (4) orders entered prior to the conclusion of the proceeding that are certified for interlocutory appeal under HRS § 641(b); HPR 34(b).

4. Thus, following the reasoning of the United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), we have held that "[c]ertain collateral orders affecting rights which are independent of, and separable from, the rights asserted in the main action are immediately appealable since they may not be effectively reviewable and rights could be lost, perhaps irretrievably, if review invariably had to await final judgment."

■ This guardianship proceeding is not complete and a final judgment closing the proceeding has not been entered. The May 3, 2001 Order authorizing the sale of the HOVE property for $35,000 to Robert Drake pursuant to a March 14, 2001 DROA is no more appealable now than it was when on July 23, 2001, in appeal no. 24224, the Hawai'i Supreme Court entered an Order Dismissing Appeal of the May 3, 2001 Order on the ground that "a final judgment closing the proceeding has not been entered" and "the May 3, 2001 order approving the sale of real property, . . . is an interlocutory order that was not certified for interlocutory appeal[.]"

■ In circuit court civil cases, certain collateral orders defined in *Siangco v. Kasadate*, 77 Hawai'i 157, 161, 883 P.2d 78, 82 (1994),[4] are immediately appealable as final orders under HRS § 641–1(a). Immediate appeal is allowed of a sanction order against a party that is immediately enforceable through contempt proceedings and that places the sanctioned party in immediate jeopardy of being found in contempt of court for failure to comply. *Harada v. Ellis*, 60 Haw. 467, 480, 591 P.2d 1060, 1070 (1979). An enforceable monetary judgment based on a sanction order against a party is immediately appealable. *Kukui Nuts of Haw., Inc. v. R. Baird & Co.*, 6 Haw.App. 431, 435, 726 P.2d 268, 271 (1986).

Thus, (a) the January 29, 2002 Order Re: Motion for Fees and Costs, (b)(i) the January 29, 2002 Order Re: Motion for Order to Show Cause, and (b)(ii) the January 29, 2002 Final Judgment are immediately appealable.

However, the sole point on appeal asserted by Richard Adam in the opening brief states as follows:

1. The Trial Court abused its discretion when it approved the sale of the [HOVE]

In order to fall within the narrow ambit of the collateral order doctrine, the "order must [1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment."
*Siangco v. Kasadate*, 77 Hawai'i 157, 161, 883 P.2d 78, 82 (1994).

property registered in Michele Adam's name. The value of the property was $69,000 just several years before [the Guardian's] appointment. *See* Motion for Confirmation of Sale Transcript, 02/15/00 at pages 79–80. Irrespective of the fact that the value of the property was $69,000, just several years before [the Guardian's] appointment, and [the Guardian's] own acknowledged value of $45,000 for the subject property, [the Guardian] accepted an offer for a mere $35,000.00 in selling the subject property. *See* Transcript, 04/05/01 at pages 2–3. See also Order Granting Approval ROA Vol. 2, pp. 203–204/Appendix "A"

In support of that one point, Richard Adam argues in the opening brief, in relevant part, as follows:

1. Based on the record below, the trial court abused its discretion when it approved the sale of the [HOVE] property, which was registered in Michele Adam's name for the low amount of $35,000.00. ... Irrespective of the fact that the value of the property was $69,000, just several years before [the Guardian's] appointment, and [the Guardian's] own acknowledged value of $45,000 for the subject property, [the Guardian] accepted an offer for a mere $35,000.00 in selling the subject property....

....

Based on the fact that even the trustee acknowledged the value of the property as 25% more, combined with the fact that the value of the property would have almost doubled once installation was completed by HELCO, this Honorable Court, despite evidence to support the finding, must be left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed....

....

Based on the foregoing, [Richard Adam] respectfully requests that this Honorable Court vacate the Order granting the Motion to approve the sale of the [HOVE] property which was registered in Michele Adam's name for the low amount of $35,000.00 and remand this case to the Family Court of the Third Circuit for fur-

ther proceedings consistent with this proceeding.

As noted above, we do not have appellate jurisdiction to review the May 3, 2001 Order. Therefore, we do not have appellate jurisdiction to decide the sole point on appeal stated in Richard Adam's opening brief.

Hawai'i Rules of Appellate Procedure, Rule 28(b)(4) states that "[p]oints not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." Pursuant to this rule, we have appellate jurisdiction to discuss an issue presented by the January 29, 2002 orders and Final Judgment.

## PLAIN ERROR

As noted above, the court entered the July 10, 2000 Order which states, in relevant part, as follows:

Richard Adam is hereby ordered to pay the Guardian all of the following sums and expenses:

i) the sum of $334.00 dollars for real property taxes paid by the Guardian for the Milolii property;

ii) the sum of $482.96 for clean-up and removal costs incurred by the Guardian for the Milolii property[.]

As noted above, on November 17, 2000, the court entered a final judgment against Richard Adam in favor of the Estate of Michele Adam in the amount of $966.96. This $966.96 included the $334 and the $482.96 that the July 10, 2000 Order ordered Richard Adam to pay.

As noted above, "(b)(i) the January 29, 2002 Order Re: Motion for Order to Show and (b)(ii) the January 29, 2002 Final Judgment" are based on the following facts:

1. ... Richard Adam violated this court's prior orders by:

a) wrongfully removing certain *fixtures* from the property this court had previously determined belonged to the Estate of Michelle Adam (e.g., the Hawaiian Ocean View Estate property hereinafter the "HOVE Property") in violation of the Findings of Fact, Conclusions of Law, Or-

der and Final Judgment entered by this court on August 28, 2000 (hereinafter "8/28/00 FOFCL and judgment"); and

b) by failing and/or refusing to timely reimburse the Guardian for all of the sums and expenses that this Court had ordered [Richard Adam] to pay the Guardian in violation of this Court's Order dated July 10, 2000.

 These facts present no less than the following two questions of law.[5] First, when the court ordered the respondent to pay a specific amount of money to the estate and thereafter entered a monetary judgment in favor of the estate and against the respondent for that specific amount of money, does the prior court order continue in effect? The answer is no. The subsequent judgment satisfies the prior order and/or the prior order merges with the subsequent judgment. After the court entered the monetary judgment, the prior court order no longer had any force and effect and the court cannot sanction respondent for noncompliance with the prior court order.

 The second question is, when the court entered a monetary judgment in favor of the estate and against the respondent and the respondent thereafter failed to pay the monetary judgment, can the court hold the respondent in civil contempt of court for noncompliance with the nonpayment of that monetary judgment and, partly as a sanction for that contempt, order the respondent to pay $1,000 to the attorneys for the petitioner?

In determining a party's civil remedy for enforcing a monetary judgment, we turn to HRCP Rule 69 (2004). Rule 69 states:

Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment shall be in the matter provided by the law of the State. In aid of the judgment or execution, the judgment creditor or his successor in interest when that interest appears of record, may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules for taking depositions.

 "Generally, money judgments are enforced by execution. Various other collateral or auxiliary remedies are available for the enforcement of money judgments, but contempt of court is not one of those remedies." *Bahre v. Bahre,* 248 Ind. 656, 230 N.E.2d 411, 415 (1967). Although the " 'unless' clause appears to provide courts with means other than execution to satisfy a money judgment, such means should be used only in situations in which execution is an inadequate remedy." *United States v. Gritz Bros. P'ship.,* 868 F.Supp. 254, 256–57 (D.Wis.1994). *See also, Aetna Casualty & Surety Co. v. Markarian,* 114 F.3d 346, 349 (1st Cir.1997)("The 'otherwise' clause is narrowly construed. It does not authorize enforcement of a civil money judgment by methods other than a writ of execution, except where 'well established principles [so] warrant.' "); 17 AM.JUR. 2d *Contracts* § 124 (2004) ("As a general rule, money judgments are not enforceable by contempt proceedings[.]").

As the following quote indicates, even in a state that appears to permit a court to use its civil contempt power to hold a judgment debtor in civil contempt for failure to pay a monetary judgment, that power is severely limited in that situation.

After defendant was found liable for $2,000 in small claims court, he failed to pay the amount awarded. Following a financial disclosure hearing pursuant to 12 V.S.A. § 5537 and D.C.C.R. 80.3(m), the small claims court found defendant had the ability to pay and ordered him to do so. He again refused to pay, and, after a show cause hearing, the court held him in contempt for refusal to pay. Sanctions were withheld while plaintiff pursued a writ of execution, but the writ was not served.

At a second show cause hearing, the court found "incredible" defendant's claim that he was impecunious. Instead, it

---

5. We leave open the question presented by the fact that the December 14, 2000 motion for contempt was filed after the court, on November 17, 2000, considered the contemptuous noncompliance with the order and converted the order into, or replaced the order by, a judgment.

found that defendant had willfully dissipated or hidden his liquid assets and structured his financial affairs to make himself appear judgment proof. It concluded that defendant "has had and continues to have, the ability to pay this judgment, but has willfully refused to do so," and further stated that withholding sanctions pending a writ of execution would be a "futile gesture given the circumstances of this case." The court found defendant in contempt of court and ordered him imprisoned unless he paid the judgment or filed a proposed payment plan. Instead, he appealed to the superior court, which upheld the small claims court's decision. He then appealed to this Court.

The small claims court characterized as "contumacious conduct" defendant's "statement of refusal [to pay] ... given in open court, under oath and in direct response to the court's inquiry." Although the court has discretionary power to punish a party for contempt, noncompliance with a court order by itself is an insufficient basis for exercising that power. Rather, in order to hold a person in contempt, a court must find, based on evidence, that defendant not only refused to pay but also that he has the ability to make the ordered payments. *Id.*[*Spabile v. Hunt*, 134 Vt. 332, 360 A.2d 51] Contempt cannot be used as a mere debt-collecting device. Inability to pay a court-ordered judgment is a defense against contempt because contempt cannot be used against a person powerless to comply. *Id.* at 335, 360 A.2d at 52.

The court's use of the contempt power was premature and based on an insufficient foundation. Its finding that defendant had the ability to pay was based primarily on his admission that he had given away over $20,000 to his children within the last year. While this may be evidence of willful dissipation of assets, it is not evidence of present ability to pay. In fact, it suggests the contrary. Although other remedies may exist for dissipation of assets, contempt cannot be used as punishment. If defendant has no present resources, he cannot purge himself of contempt, and that remedy is not appropriate.

Defendant's direct statements about his ability to pay were sometimes vague, sometimes conflicting. Apparently, defendant's sole income is his monthly $558 disability check, which is unreachable as an exempt asset. The only other evidence of present assets was reference to unspecified and unvalued assets held jointly by defendant with his wife. Plaintiff had filed an action against defendant's wife to establish her separate liability, but he did not pursue it. He also drew up a writ of execution, but it was never served. The court did not establish that defendant had any reachable assets not jointly owned. Hence, its finding that defendant had the present ability to pay was unsupported by the evidence and clearly erroneous. Because defendant's present ability to pay has not been adequately addressed, the case must be remanded.

Further, even if defendant has an ability to pay, he is entitled to a reasonable time to pay, as determined by the court from the evidence, and cannot be held in contempt until the time elapses. The court offered defendant the option of a payment plan but required an immediate payment and continuing payments of no less than $150 a month without any finding that a specific amount or time frame for paying it would be reasonable.

On remand, defendant has the burden of establishing inability to pay. He has, to this point, been vague, even obstructive, on the issue of his assets. The court is not powerless in the face of defendant's lack of cooperation; it can use the contempt power to force him to comply fully with the financial disclosure process.

*Hale v. Peddle*, 648 A.2d 830, 831–32 (Vt. 1993) (internal citations omitted).

In the instant case, there is no evidence on the record supporting the court's decision to bypass the standard execution process for a monetary judgment outlined in HRCP Rule 69.

## CONCLUSION

For lack of appellate jurisdiction, we dismiss the appeal from the May 3, 2001 Order

Granting Motion for Approval of Sale of Real Property.

For plain error, we vacate (1) the January 29, 2002 Order and Entry of Final Judgment on Petitioner Gloria Poorman's Motion for Order to Show Cause Why Respondent Richard Adam Should Not Be Held in Contempt of Court and for a Final Judgment Thereon filed herein on December 14, 2000 and Affidavit of Costs and Fees Re Petitioner Gloria Poorman's Motion for Order to Show Cause Why Respondent Richard Adam Should Not Be Held in Contempt of Court and for a Final Judgment Thereon filed herein on February 22, 2001, and (2) the January 29, 2002 Final Judgment. We remand for further proceedings consistent with this opinion.